# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

2014-1323

_____

TEASHOT.LLC, a Colorado limited liability company,

Plaintiff-Appellant,

v.

GREEN MOUNTAIN COFFEE ROASTERS, INC., a Delaware corporation,

KEURIG, INCORPORATED, a Delaware corporation,

STARBUCKS CORPORATION, a Washington corporation,

Defendants-Appellees.

Appeal from the United States District Court for the District of Colorado in Case No. 12-CV-00189, Judge William J. Martínez.

_____

## BRIEF OF DEFENDANTS-APPELLEES GREEN MOUNTAIN COFFEE ROASTERS, INC., KEURIG, INCORPORATED, AND STARBUCKS CORPORATION

Michael A. Albert
Gerald B. Hrycyszyn
Hunter D. Keeton
WOLF, GREENFIELD &
SACKS, P.C.
600 Atlantic Avenue
Boston, MA 02210
Tel:  (617) 646-8000
Fax: (617) 646-8646

*Attorneys for Defendants-Appellees Green Mountain Coffee Roasters, Inc., n/k/a Keurig Green Mountain, Inc., and Keurig, Incorporated.*

Aaron P. Bradford
Alexander C. Clayden
LATHROP & GAGE LLP
950 17th Street, Suite 2400
Denver, CO 80202
Tel:  (720) 931-3200
Fax:  (720) 931-3201

*Attorneys for Defendants-Appellees Green Mountain Coffee Roasters, Inc., n/k/a Keurig Green Mountain, Inc., Keurig, Incorporated, and Starbucks Corporation.*

Date: June 19, 2014

## <u>CERTIFICATE OF INTEREST</u>

Counsel for Defendants-Appellees, Green Mountain Coffee Roasters, Inc.

and Keurig, Incorporated, certifies the following:

1.     The full name of every party or amicus represented by me is:

Green Mountain Coffee Roasters, Inc., which has changed its name to
Keurig Green Mountain, Inc., and Keurig, Incorporated

2.     The name of the real party in interest (if the party named in the caption is not
the real party in interest) represented by me is:

Green Mountain Coffee Roasters, Inc., which has changed its name to
Keurig Green Mountain, Inc., and Keurig, Incorporated

3.     All parent corporations and any publicly held companies that own 10 percent
or more of the stock of the party represented by me are:

Keurig, Incorporated is a wholly-owned subsidiary of Keurig Green
Mountain, Inc. ("KGM"), which is a publicly-traded company (NASDAQ:
GMCR).  KGM has no parent company and no publicly held corporation
that owns more than 10% of its stock.

4.     The names of all law firms and the partners or associates that appeared for
the party now represented by me in the trial court or agency or are expected to
appear in this court are:

Wolf, Greenfield & Sacks, P.C.: Michael A. Albert, Gerald B. Hrycyszyn,
Hunter D. Keeton; and Lathrop & Gage, LLP: Aaron P. Bradford, Alexander
C. Clayden

Date: June 19, 2014                    /s/ Michael A. Albert_____
                                       Michael A. Albert
                                       *Attorney for Defendants-Appellees*
                                       *Green Mountain Coffee Roasters,*
                                       *Inc., n/k/a Keurig Green Mountain,*
                                       *Inc., and Keurig, Incorporated.*

## <u>CERTIFICATE OF INTEREST</u>

Counsel for Defendants-Appellees, Green Mountain Coffee Roasters, Inc.,

Keurig, Incorporated, and Starbucks Corporation, certifies the following:

1.     The full name of every party or amicus represented by me is:

     Green Mountain Coffee Roasters, Inc., which has changed its name to Keurig Green Mountain, Inc., Keurig, Incorporated, and Starbucks Corporation

2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

     Green Mountain Coffee Roasters, Inc., which has changed its name to Keurig Green Mountain, Inc., Keurig, Incorporated, and Starbucks Corporation

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by me are:

     Starbucks Corporation has no parent corporation and no publicly held company owns 10 percent or more of its stock.  For disclosures relating to Keurig Green Mountain, Inc. and Keurig, Incorporated, see the immediately preceding Certificate of Interest.

4.     The names of all law firms and the partners or associates that appeared for the party now represented by me in the trial court or agency or are expected to appear in this court are:

     Wolf, Greenfield & Sacks, P.C.: Michael A. Albert, Gerald B. Hrycyszyn, Hunter D. Keeton for Green Mountain Coffee Roasters, Inc. and Keurig, Incorporated; and Lathrop & Gage, LLP: Aaron P. Bradford, Alexander C. Clayden for Green Mountain Coffee Roasters, Inc., Keurig, Incorporated, and Starbucks Corporation.

Date: June 19, 2014         /s/ Aaron P. Bradford

                         Aaron P. Bradford
                         *Attorney for Defendants-Appellees Green Mountain Coffee Roasters, Inc., n/k/a Keurig Green Mountain, Inc., Keurig, Incorporated, and Starbucks Corporation.*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................... iii

STATEMENT OF RELATED CASES ................................................ vi

STATEMENT OF THE ISSUES...........................................................1

STATEMENT OF THE CASE................................................................2

STATEMENT OF THE FACTS.............................................................4

   I.   Tea and Coffee Machines ...........................................................4

   II.   Teashot's '672 Patent ................................................................5

   III.   Defendants' Accused Products.....................................................7

SUMMARY OF THE ARGUMENT ...................................................11

ARGUMENT .....................................................................................13

   I.   Standard of Review......................................................................13

   II.   Teashot Waived the New Arguments, Issues, and Evidence
      It Raised for the First Time in Its Appellant's Brief. ...................14

   III.   The Court Should Affirm Summary Judgment of Noninfringement
       Because the Accused Products Do Not Meet the Limitation
       "Sealed Body Is Constructed of a Water-Permeable Material…."...........15

     A.   The District Court's Claim Construction Is Correct. ..............16

       1.   The Claim Language.....................................................16

       2.   The Specification and Prosecution History .........................19

       3.   Figure 4 .....................................................................24

       4.   The '335 Patent .............................................................28

     B.   Defendants Do Not Meet the Limitation................................29

       1.   Noninfringement of Independent  Claims 1 or 21, or
          Their Dependent Claims ...............................................29

       2.   Teashot's Position Would Render the Limitation
          "Water-Permeable Material" Meaningless. .........................34

       3.   The District Court's Alleged  Supplemental Claim
          Construction ...............................................................37

   IV.   Teashot Waived Any Claim Under the Doctrine of Equivalents................39

i

A.     Teashot Violated the Scheduling Order. .................................................39

B.     The District Court Did Not Violate Rule 83. ..........................................43

C.     Teashot's Pretrial Order Argument Is Incorrect. ....................................45

V.   The Court Should Affirm Summary Judgment of  Noninfringement
on Three Alternative Grounds. .......................................................46

A.     The Doctrine of Equivalents Does Not Cover the Accused
Products. ...........................................................................................47

B.     Defendants Do Not Meet the Stipulated Construction of
"a Sealed Body Having at Least One Compartment…." ........................52

C.     The Defendants Do Not Meet the Limitation "a Tea
Composition Comprising From About 2 to About 10 Grams…." ...........55

1.     This Court Should Alter the District Court's Construction. .................55

2.     Defendants Undisputedly Do Not  Meet the Correct
Construction. ......................................................................................62

CONCLUSION ...................................................................................64

# TABLE OF AUTHORITIES

**Cases**

Apple Inc. v. Motorola, Inc.,
    No. 2012-1548, 2014 WL 1646435 (Fed. Cir. Apr. 25, 2014) .................... 60, 61
Asyst Techs., Inc. v. Emtrak, Inc.,
    402 F.3d 1188 (Fed. Cir. 2005) ...............................................................49
Aventis Pharma S.A. v. Hospira, Inc.,
    637 F.3d 1341 (Fed. Cir. 2011) ...............................................................46
Bell Atl. Network Servs. v. Covad Commc'ns Group,
    262 F.3d 1258 (Fed. Cir. 2001) ...............................................................21
Bicon, Inc. v. Strauman Co.,
    441 F.3d 945 (Fed. Cir. 2006) ...................................................... 35, 37
Brilliant Instruments, Inc. v. GuideTech, LLC,
    707 F.3d 1342 (Fed. Cir. 2013) ...............................................................52
Chimie v. PPG Indus., Inc.,
    402 F.3d 1371 (Fed. Cir. 2005) ...............................................................59
Commodity Futures Trading Comm'n v. Brockbank,
    316 F. App'x 707 (10th Cir. 2008).................................................. 13, 41
Contech Stormwater Solutions, Inc. v. Baysaver Techs., Inc.,
    310 Fed. App'x 404 (Fed. Cir. 2009) ......................................................33
Contech Stormwater Solutions, Inc. v. Baysaver Techs., Inc.,
    No. 07-358, 2007 WL 2872074 (D. Md. Sep. 25, 2007) ......................33
Deere & Co. v. Bush Hog, LLC,
    703 F.3d 1349 (Fed. Cir. 2012) ........................................... 35, 48, 51, 52
Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.,
    93 F.3d 1572 (Fed. Cir. 1996) ........................................................ 36, 37, 39
Exxon Chem. Patents, Inc. v. Lubrizol Corp.,
    64 F.3d 1553 (Fed. Cir. 1995) ...............................................................38
Fujitsu Ltd. v. Netgear Inc.,
    620 F.3d 1321 (Fed. Cir. 2010) ...............................................................38
Gillette Co. v. Energizer Holdings, Inc.,
    405 F.3d 1367 (Fed. Cir. 2005) ...............................................................61
Golden Bridge Tech., Inc. v. Nokia, Inc.,
    527 F.3d 1318 (Fed. Cir. 2008) ...................................................... 14, 15
Kaufman v. Am. Family Mut. Ins. Co.,
    601 F.3d 1088 (10th Cir. 2010).................................................................15
Kruse Tech. P'ship v. Volkswagen AG,
    544 F. App'x 943 (Fed. Cir. 2013).............................................. 28, 44, 52

Lion Raisins, Inc. v. United States,
  416 F.3d 1356 (Fed. Cir. 2005) ...........................................................46
Marine Polymer Techs., Inc. v. HemCon, Inc.,
  672 F.3d 1350 (Fed. Cir. 2012) .................................................... 22, 56
Mass. Inst. of Tech. v. Abacus Software,
  462 F.3d 1344 (Fed. Cir. 2006) ...........................................................44
McDonald v. Kinder-Morgan, Inc.,
  287 F.3d 992 (10th Cir. 2002) .............................................................15
Modine Mfg. Co. v. Allen Group, Inc.,
  917 F.2d 538 (Fed. Cir. 1990) .............................................................13
Moore U.S.A., Inc. v. Standard Register Co.,
  229 F.3d 1091 (Fed. Cir. 2000) ...........................................................48
Nat'l Credit Union Admin. v. First Nat. Bank,
  522 U.S. 479 (1998) .............................................................................56
Novatek, Inc. v. Sollami Co.,
  No. 2013-1389, 2014 WL 1229547 (Fed. Cir. Mar. 26, 2014) ............... 35, 36, 37
O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.,
  467 F.3d 1355 (Fed. Cir. 2006) .................................................... 13, 41
Oak Tech., Inc. v. Int'l Trade Comm'n,
  248 F.3d 1316 (Fed. Cir. 2001) ...........................................................18
Packless Metal Hose, Inc. v. Extek Energy Equip. (ZHEJIANG) Co., Ltd.,
  No. 09-265, 2013 WL 682845 (E.D. Tex. Feb. 22, 2013) ...................................52
Phillips v. AWH Corp.,
  415 F.3d 1303 (Fed. Cir. 2005) .................................................... 16, 59
Pieczenik v. Dyax Corp.,
  76 F. App'x 293 (Fed. Cir. 2003) ........................................................56
Planet Bingo, LLC v. Gametech Int'l, Inc.,
  472 F.3d 1338 (Fed. Cir. 2006) ...........................................................49
PSC Computer Prods., Inc. v. Foxconn Int'l, Inc.,
  355 F.3d 1353 (Fed. Cir. 2004) ...........................................................57
Sage Prods., Inc. v. Devon Indus., Inc.,
  126 F.3d 1420 (Fed. Cir. 1997) .................................................... 15, 49
Siemens Med. Solutions USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.,
  637 F.3d 1269 (Fed. Cir. 2011) ...........................................................48
Singleton v. Wulff,
  428 U.S. 106 (1976) .............................................................................14
Skyline Zipline Global, LLC v. Domeck,
  922 F. Supp. 2d 1130 (D. Haw. 2013) ........................................... 49, 52
Speedtrack, Inc. v. Endeca Techs., Inc.,
  524 F. App'x 651 (Fed. Cir. 2013) .....................................................44

iv

Starhome GmbH v. AT & T Mobility LLC,
    743 F.3d 849 (Fed. Cir. 2014) ...................................................... 60, 61
Titan Tire Corp. v. Case New Holland, Inc.,
    566 F.3d 1372  (Fed. Cir. 2009) ...................................................13
Univ. of W. Va. Bd. of Trustees v. VanVoorhies,
    278 F.3d 1288 (Fed. Cir. 2002) ....................................................14
Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.,
    520 U.S. 17 (1997) ......................................................................48
Wavetronix LLC v. EIS Elec. Integrated Sys.,
    573 F.3d 1343 (Fed. Cir. 2009) ...................................................48
Wilson v. Muckala,
    303 F.3d 1207 (10th Cir. 2002) ...................................................46
Woods v. DeAngelo Marine Exhaust, Inc.,
    692 F.3d 1272 (Fed. Cir. 2012) ............................................... 42, 44

**Statutes**
35 U.S.C. § 112 ........................................................................ 5, 26, 32

**Other Authorities**
The American Heritage Dictionary, 2d College ed. (1991)....................................56
Webster's 3rd New Int'l Dictionary (1993)............................................................56

**Rules**
F.R.C.P. 26(e) .......................................................................... 41, 43, 45
F.R.C.P. 37 ..................................................................................41
F.R.C.P. 83 .................................................................. 12, 41, 43, 44
Federal Circuit Rule 28(a)(8)................................................................2
Federal Circuit Rule 32.1 ........................................................................33
Federal Circuit Rule 47.5 ..................................................................... vi

v

## <u>STATEMENT OF RELATED CASES</u>

Pursuant to Federal Circuit Rule 47.5, Defendants-Appellees, Green Mountain Coffee Roasters, Inc., which has changed its name to Keurig Green Mountain, Inc., Keurig, Incorporated, and Starbucks Corporation, represent that there are no pending related cases, and that there have been no prior appeals in this matter.

## STATEMENT OF THE ISSUES

1.  Whether the district court erred in granting summary judgment that the accused products do not infringe Teashot.LLC's ("Teashot") United States Patent No. 5,895,672 (the "'672 patent") because they do not meet the "sealed body is constructed of a water-permeable material which allows flow of a fluid through said sealed body to produce a tea extract from said tea composition" claim limitation, which appears in all asserted independent claims.

2.  Whether the district court abused its discretion in holding that Teashot waived any claim under the doctrine of equivalents by failing to timely disclose it.

3.  If reached, whether this Court may affirm on any of these alternative grounds:

    A.  The accused products do not infringe under the doctrine of equivalents;

    B.  The accused products do not meet the asserted claims' separate limitation of "a sealed body having at least one compartment, said internal compartment containing said tea composition"; or

    C.  The accused products do not meet the asserted claims' separate limitation of "a tea composition comprising from about 2 grams to about 10 grams of tea having a particle size of from about 0.40 mm to about 0.75 mm."

1

# STATEMENT OF THE CASE[1]

Teashot sued Defendants-Appellees, Green Mountain Coffee Roasters, Inc., which has changed its name to Keurig Green Mountain, Inc., Keurig, Incorporated ("Keurig"), and Starbucks Corporation (collectively, "Defendants") (A144-166, complaint), alleging that they infringe certain claims of Teashot's '672 patent. A64-78. Defendants answered, denying infringement. A257-278.

As part of the claim construction process, the parties were required to, and did, exchange their infringement and invalidity contentions. A309, 335-336, 351-352. Teashot's infringement contentions made no assertion under the doctrine of equivalents. A1100, 1142-1146. After briefing and argument, the district court issued its claim construction order. A21-42.

Defendants filed a motion for summary judgment of noninfringement in May 2013. A1078-1099. Teashot opposed the motion. A1218-1250.

On February 6, 2014, the district court granted Defendants' motion for summary judgment. A43-62. Final judgment entered the next day. A63. Teashot filed a notice of appeal A139-141, and now seeks reversal of a portion of the district court's claim construction order, as well as its grant of summary judgment

---

[1] Teashot's brief contains only a section titled "Statement of the Case," and omits the statement of the facts required by Federal Circuit Rule 28(a)(8). Brief of Appellant, D.I. 31 ("Br.") at 2-17. However, that section discusses a mixture of procedural and factual issues. Id. Defendants therefore address their areas of disagreement on both types of issues in this section and the next.

that Defendants' accused K-Cup® packs do not infringe the asserted claims of the

'672 patent.  Brief of Appellant, D.I. 31 ("Br.") at 17-22.

## STATEMENT OF THE FACTS

### I.    Tea and Coffee Machines

Teashot's '672 patent relates to making tea in coffee brewing machines and espresso machines.  Tea has been cultivated in China for thousands of years, and has been globally distributed in the West since the 17th Century.  A1175, 1180.  In the early 20th Century, people started placing tea in tea bags in order to facilitate the brewing of tea beverage in single servings.  A1186.

In the 1980s and '90s, specialized forms of coffee such as espresso increased in popularity.  A68, 1:14-21.  Espresso is brewed in special machines, which operate at higher temperatures and pressures than regular drip-coffee makers.  A73, 12:14-56.  To help standardize preparation, the ground coffee is placed into coffee "pods" before being placed in an espresso machine.  A68, 1:46-54.  These "pods" consist of  "an enclosed water-permeable pod or package which contains a pre-measured amount of ground coffee that is preferably compressed to provide a consistent measure of coffee for production of espresso beverages."  A68, 1:54-59.  The '672 patent incorporates several prior-art examples of such "pods" A68, 1:50-54, which might be disk- or square-shaped, including:



**Fig. 1 of Cisaria, U.S. Patent No. 5,638,741 (A1192)**

4

The '672 patent discusses the brewing of tea extract (i.e., tea beverage) in such coffee machines.  A68, 1:6-12.

## II.  Teashot's '672 Patent

Teashot asserted independent claims 1 and 21, and some claims that depend from them.  A1148-1172.  As the district court correctly found that Defendants do not infringe independent claims 1 or 21, they cannot infringe **any** of the asserted claims, because the dependent claims incorporate all of the independent claims' limitations.  35 U.S.C. § 112, ¶ 4.

The two asserted independent claims each recite combinations of only three different elements, using virtually identical language.  Claim 1 recites:

> 1. A tea extract system for production of a serving of tea extract in a coffee brewing device, comprising:
>
> (a) **a tea extraction container** for containing a tea composition, said tea extraction container comprising **a sealed body** having at least one internal compartment, said internal compartment containing said tea composition;
>
> wherein said **sealed body is constructed of a water-permeable material which allows flow of a fluid through said sealed body to produce a tea extract from said tea composition**; and,
>
> (b) **a tea composition comprising from about 2 grams to about 10 grams of tea having a particle size of from about 0.40 mm to about 0.75 mm**.

A76, claim 1.[2]  The tea extract system of claim 1 thus has three requirements.

---

[2] In this brief, emphasis is added and quotations and citations omitted, unless otherwise noted.

First, it requires a tea extraction container that has a "sealed body" containing a tea composition, where the sealed body is "constructed of a water-permeable material which allows flow of a fluid through said sealed body to produce a tea extract from said tea composition." Figures 1A-3A of the '672 patent, reproduced below, illustrate such tea extraction containers and sealed bodies. Figure 4 shows a set of three open tea extraction containers (in the form of trays) rotatably connected by an axial member, into which one can place sealed bodies like those shown in figures 1A-3A.



**'672 Patent, Figs. 1A-1B (showing top and side views of a single tea extraction container 20, sealed body 22, and tea composition 28)**



**'672 Patent, Figs. 2A-2B (showing top and side views of a double tea extraction container 30, two sealed bodies 22, and tea composition 28)**

 

**'672 Patent, Figs. 3A-3B (showing top and side views of a triple tea extraction container, three sealed bodies 22, and tea composition 28)**

A65-66.

Second, the tea composition of claim 1 (shown as 28 in the figures above) comprises "from about 2 grams to about 10 grams of tea."

Third, that tea has "a particle size of from about 0.40 mm to about 0.75 mm."

Claim 21 is a method claim requiring a tea extract system with limitations that are identical to claim 1, placing it into a "coffee brewing device," and operating the device to produce a tea extract.  A77, claim 21.

## III.    Defendants' Accused Products

Teashot accused certain of Defendants' tea-filled K-Cup® packs of infringing the asserted claims.  A1148-1172.  The accused K-Cup® packs consist of a water-**impermeable** plastic container with an internal filter and tea, such as:



**Example of Accused K-Cup® Pack (A1086-1087, 1200)**

The container has a lid made of water-**impermeable** foil/plastic laminate. A144-256, 1142-1172, 1200-1206. The tea is contained within a space bounded by the internal filter (on the bottom and sides) and the foil lid (on top). The foil lid seals the upper portion of the internal filter to contain the tea.



**Foil lid and internal filter**



**Foil lid and internal filter**

In order to brew a cup of tea, a user inserts a K-Cup® pack into a Keurig brewer. As noted, the foil lid is water-impermeable. Accordingly, water can only be injected into the internal filter through a needle. When the brewer closes, top and bottom needles puncture the water-impermeable foil lid and the bottom of the water-impermeable plastic container, respectively, as shown below. Once a brew cycle is selected, the machine injects water through the top needle into the pack. The water exits first through the bottom portion of the internal filter, and ultimately

through the bottom exit needle into a user's cup.



**Bottom portion of internal filter**



**Puncture hole in foil lid via which needle injects water into the internal filter**



**Bottom puncture hole made by needle through which brewed beverage exits**

Teashot agrees on the structure, showing diagrams with a plastic housing (1), foil lid (2), and filter paper (3) (Br. at 8-9):



9



# SUMMARY OF THE ARGUMENT

This Court should affirm the district court's grant of summary judgment for several reasons.

First, the district court correctly construed the limitation "sealed body is constructed of a water-permeable material which allows flow of a fluid through said sealed body…." The claim language, specification, and prosecution history all require that the portions into which and out of which the fluid flows are water-permeable material. Teashot's proposed construction, by contrast, ignores portions of the claim limitation and seeks to divorce the "water-permeable material" from the "allow[ing] flow of a fluid" function that the claim requires it to perform. In addition, many of Teashot's arguments on this issue (and others) were never presented to the district court. Those arguments are therefore waived.

Second, under the district court's construction, the accused K-Cup® packs do not infringe. The top lid of the packs is constructed of a water-**im**permeable foil, a fact Teashot admits. Piercing the foil with an inlet needle after placement in a Keurig brewer, and injection of water into the pack via the needle (which remains in the pack), does not render the material itself water-permeable. Further, to find that piercing a hole in water-impermeable material makes the material water-permeable would render the claim limitation meaninglessly empty, as practically any material can have a hole pierced in it. The claim limitation would never

exclude any device and could cover anything, contrary to controlling law.

Third, Teashot waived any claim under the doctrine of equivalents ("DOE"). Teashot was subject to a scheduling order requiring it to provide its infringement contentions on May 1, 2012, and Teashot provided contentions without any DOE allegation. The scheduling order bound Teashot, and the district court had the power to enforce that order. Yet despite multiple unauthorized supplementations, Teashot did not disclose that it was asserting DOE at all prior to the court-ordered deadline or indeed for eleven months thereafter, and did not disclose the **basis** for any DOE contention until after the close of fact discovery, and nearly one year after the scheduling order's deadline. Teashot thereby prejudiced Defendants, by preventing them from taking any discovery on the issue. Teashot's suggestion that the district court abused its discretion under Rule 83 fails; indeed, the enforcement of a stipulated and court-ordered deadline is routine and courts could hardly function otherwise.

And finally, this Court may affirm on three alternate grounds. One, this Court should find that DOE does not cover the accused products. Two, Defendants do not meet the stipulated construction of the **separate** claim limitation "a sealed body having at least one compartment…." Three, under the correct construction, Defendants do not meet the limitation "a tea composition comprising from about 2 to about 10 grams…."

# ARGUMENT

## I.    Standard of Review

Defendants do not dispute Teashot's statement of the standard of review on claim construction and summary judgment.  Br. at 22-23.

Teashot understates the level of deference due to the district court's decision finding waiver of Teashot's DOE theory, which is reviewed only for abuse of discretion.  See O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc., 467 F.3d 1355, 1363, 1369 (Fed. Cir. 2006) (reviewing failure to obey a case management order – a type of scheduling order – for abuse of discretion); Commodity Futures Trading Comm'n v. Brockbank, 316 F. App'x 707, 713-714 (10th Cir. 2008) (district court has authority "to impose appropriate sanctions," including exclusion of evidence, "on a party who fails to obey a scheduling or pretrial order….  We review the court's imposition of sanctions for abuse of discretion."; affirming district court's exclusion of exhibits and witnesses for failure to obey scheduling order).

"Abuse of discretion is **a deferential standard of review** that requires a showing that the court made **a clear error of judgment** in weighing relevant factors or exercised its discretion based upon an error of law or **clearly erroneous** factual findings."  Titan Tire Corp. v. Case New Holland, Inc., 566 F.3d 1372, 1375 (Fed. Cir. 2009).  Showing an abuse of discretion is "difficult."  Modine Mfg. Co. v. Allen Group, Inc., 917 F.2d 538, 543 (Fed. Cir. 1990).  Where, as here, the

issue involves the district court's control of discovery, this Court "decline[s] to interfere with a court's management of the discovery process absent a showing of a clear abuse of discretion or extreme prejudice." Univ. of W. Va. Bd. of Trustees v. VanVoorhies, 278 F.3d 1288, 1304 (Fed. Cir. 2002).

## II.    Teashot Waived the New Arguments, Issues, and Evidence It Raised for the First Time in Its Appellant's Brief.

Teashot's brief repeatedly raises new arguments, issues, and evidence that were not before the district court, including: (1) that the phrase "According to the present invention" in column 5 of the '672 patent applies only to the first sentence of the relevant paragraph and not the second (Br. at 29-30); (2) that the prior art U.S. Patent No. 5,637,335 to Fond et al. (the "'335 patent" or "Fond") should affect claim construction (Br. at 6, 18-21, 32); and (3) that depositions which occurred late in discovery justify its failure to timely disclose its DOE theory (Br. at 12, 40-41).  While none of these arguments suffice to alter the finding of noninfringement, in any event this Court should find that Teashot waived them.

"It is the general rule... that a federal appellate court does not consider an issue not passed upon below." Singleton v. Wulff, 428 U.S. 106, 120 (1976). "Our precedent generally counsels against entertaining arguments not presented to the district court." Golden Bridge Tech., Inc. v. Nokia, Inc., 527 F.3d 1318, 1322 (Fed. Cir. 2008) (refusing to consider new argument interpreting prior art for first time on appeal).

14

In <u>Sage Prods., Inc. v. Devon Indus., Inc.</u>, 126 F.3d 1420 (Fed. Cir. 1997), this Court discussed why it does not allow new arguments to be presented on appeal:

> This is an appellate court. By and large, it is our place to review judicial decisions – including claim interpretations and grants of summary judgment – reached by trial courts. No matter how independent an appellate court's review of an issue may be, it is still no more than that – a review. With a few notable exceptions, such as some jurisdictional matters, appellate courts do not consider a party's new theories, lodged first on appeal.

<u>Id.</u> at 1426.[3] None of the "limited" circumstances that allow consideration of a new argument on appeal (i.e., new legislation, change in the law, district court's application of incorrect law, or party proceeding *pro se* below) apply to any of Teashot's new arguments. <u>Golden Bridge Tech., Inc.</u>, 527 F.3d at 1323. This Court should therefore decline to consider them.

## III. The Court Should Affirm Summary Judgment of Noninfringement Because the Accused Products Do Not Meet the Limitation "Sealed Body Is Constructed of a Water-Permeable Material…."

This Court should affirm the district court's summary judgment of noninfringement. First, the district court correctly construed the limitation "said

---

[3] The Tenth Circuit applies the same rule. <u>See</u> <u>Kaufman v. Am. Family Mut. Ins. Co.</u>, 601 F.3d 1088, 1092 n.4 (10th Cir. 2010) ("Silvern argues for the first time on appeal that the district court did not have authority… to impose sanctions against it in this case. Because Silvern did not present this argument to the district court, we do not consider it here."); <u>McDonald v. Kinder-Morgan, Inc.</u>, 287 F.3d 992, 999 (10th Cir. 2002) (the Tenth Circuit "will not consider arguments raised for the first time on appeal.").

sealed body is constructed of a water-permeable material which allows flow of a fluid through said sealed body to produce a tea extract from said tea composition" to mean "the portions of the sealed body into which fluid flows and out of which fluid flows are water-permeable material which allows flow of a fluid through said sealed body to produce a tea extract from said tea composition." A26-31. Second, the K-Cup® pack design is not in dispute, compelling a conclusion of noninfringment.

### A.    The District Court's Claim Construction Is Correct.

### 1.    The Claim Language

Beginning with the claim language, see Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005), the claim requires that the sealed body "is constructed of a water-permeable material which allows flow of a fluid through said sealed body to produce a tea extract from said tea composition." A76-A77. This language provides that the sealed body has three elements: (1) it must be "constructed" of a "water-permeable material"; (2) it must be the water-permeable material (and not something else) that performs the "which allows" function; and (3) the water-permeable material must allow the "flow of a fluid through" the sealed body to produce a tea extract.

The claim language expressly requires that the water-permeable material provide passage of the fluid through the sealed body. The first part of the

limitation requires that the sealed body's structure be constructed of a water-permeable material. The last part of the limitation describes a function, the flow of a fluid through the sealed body. And the "**which** allows" phrase links the other two parts together. Taken as a whole, the limitation requires that it is the "water-permeable" material "which allows" the flow of fluid through the sealed body. It cannot be some other part of the "sealed body" which allows the flow, or something else entirely. Otherwise, the word "which" would have no meaning.

Rather than address the limitation as a whole, Teashot focuses on the word "through" in isolation. Br. 28-31. The plain and ordinary meaning of "through" is "into and out of" (A28), yet Teashot maintains that it can also mean "by way of," "from side to side," or "from end to end." Br. 28-31. As the district court observed, the rest of the claim forecloses such an interpretation:

> The problem with Plaintiff's construction is that the Claim language requires the fluid to flow *through* a *sealed* body. If the Claim said only that fluid had to flow through a water permeable material, then it could encompass a device in which the fluid merely exited by way of water permeable material (the top could be open or made of some other material). Or if the Claim said that fluid had to flow through the tea composition (rather than through the sealed body), then the portions of the sealed body that were constructed of a water permeable material would not matter. However, because the Claim requires that the *water permeable material* **allow** flow of a fluid *through* the *sealed body*, the portions of the sealed body into which the fluid flows and out of which the fluid flows must be made of water permeable material.

A28 (italicized emphasis in original).

Put differently, the claim language "water-permeable material **which allows flow of a fluid through said sealed body to produce a tea extract** from said tea composition" describes how the portions of the sealed body that are constructed of water-permeable function.  The water-permeable portions of the sealed body must "allow[] flow of a fluid," not just be incidental to the flow.  Further, the water-permeable portions of the sealed body must allow flow of the fluid "through" the sealed body, i.e., they must allow the fluid to both flow into and out of the sealed body.  Lastly, this flow through the sealed body must "produce a tea extract."  For these functions to occur, at least the portions of the sealed body into which the fluid flows and out of which the fluid flows must be water-permeable.

By contrast, Teashot's construction divorces the "water-permeable material" from the "flow of a fluid."  Teashot would have this Court construe the "which allows" language out of the claim and, in effect, re-write the claim limitation as requiring "a sealed body **having** water-permeable material **and allowing** flow of a fluid…."  Br. at 25-28.  Its position permits some water-permeable material, and some flow, but not necessarily as a result of the water-permeable material or "through" the sealed body, rendering the "which allows" language meaningless.  See, e.g., Oak Tech., Inc. v. Int'l Trade Comm'n, 248 F.3d 1316, 1329 (Fed. Cir. 2001) ("To construe the claims in the manner suggested by the patentee would read an express limitation out of the claims.  This we will not do because courts can

neither broaden nor narrow claims to give the patentee something different than what he has set forth.").  Because the claim uses "which allows," the two parts of the limitation are linked, and the water must actually flow through the sealed body due to the water-permeable material.

### 2.    The Specification and Prosecution History

The '672 specification supports the plain and ordinary meaning the district court adopted.  See A68, 2:48-52 ("The sealed body… is constructed of a water-permeable material which allows flow of a fluid through the sealed body to produce a tea extract from the tea composition."); A70, 5:39-47 ("**According to the present invention**,…. [t]he sealed body is constructed from a water-permeable material which allows a liquid (e.g., water) to flow through the sealed body **into** the internal compartment such that the liquid contacts the tea composition, thereby extracting the tea composition into the fluid, and then exits the sealed body as a tea extract.").

All of the specification's embodiments are consistent with the district court's construction.  The circular "pod" structures shown in Figures 1A-3B all have in-flow and out-flow surfaces which are water-permeable (filter paper).  A70, 6:1-4.  Elsewhere, the patent describes embodiments (including those Figures) in which "substantially all of the surface area of the sealed body is water-permeable," which includes at least the surfaces through which the fluid flows.  A70, 6:18-23.  The

19

prior art coffee "pod" patents the specification mentions all have the same structure.  A68, 1:50-58.

Another kind of embodiment is shown in Figure 4.  A stack of three containers with open tops are "connected to each other at the side of the sealed bodies."  A71, 7:66-8:13.  The "various layers are constructed of a stainless steel material with a perforated bottom and solid sidewalls."  A69, 3:61-63.  In use, the containers of Figure 4 remain open (as depicted by the gaps between the containers) and not "sealed", and the user places tea pods like those in Figures 1-3 into the chambers.  The surfaces into which and out of which the fluid flows are the water-permeable material (filter paper) of the tea pods.  Alternatively, Teashot appears to infer without support that, during use, the containers slide along the "connecting means 38" and lock together, turning the lower two containers into "sealed bodies" (the top container would remain open) – although the specification does not disclose any such slide-and-lock mechanism.  But even if this happened, the perforated bottom of one container would form the top on the container below it, and fluid would pass through the perforated tops and bottoms of those lower two containers.  The surfaces into which and out of which the fluid flows are water-permeable.





**'672 Patent, Fig. 1A**                **'672 Patent, Fig. 4**

Neither interpretation helps Teashot, as discussed below.  In any event, the prosecution history supports Defendants' interpretation.  A425, 473-481.  In discussing the reasons for allowance, the Examiner acknowledged that Blanc, U.S. Patent No. 5,776,527 ("Blanc") (A425, 482-490), features a "dosette" or bag in tablet form that meets the "sealed body" limitation.  A477.  Blanc's bag is the same "pod" structure shown in Figures 1A-3B, and similarly is water-permeable in both the portions into which and out of which the fluid flows:



**Blanc, Fig. 2**

A484, 488, 3:58-4:4.

"[W]hen a patentee uses a claim term throughout the entire patent specification, in a manner consistent with only a single meaning, he has defined the term 'by implication.'"  <u>Bell Atl. Network Servs. v. Covad Commc'ns Group</u>, 262 F.3d 1258, 1271 (Fed. Cir. 2001).  Moreover, when a patent describes features of

the "**present invention**," this description can limit the scope of the invention. Marine Polymer Techs., Inc. v. HemCon, Inc., 672 F.3d 1350, 1359 (Fed. Cir. 2012). In this case, every embodiment disclosed in the specification is consistent with the district court's construction, and the applicant even describes this structure as "the present invention." A70, 5:39-47.

Teashot's attempted rebuttal fails. Br. at 26-30. First, Teashot suggests that the district court relied solely on the passage from column 5 (supported by embodiments disclosed in the specification) in arriving at its construction. Br. 26-27, 29-30. That assertion is incorrect. As noted above, the district court began its analysis with the claim language (A27-28), as it should, and found the claim language supported the construction, before turning to the specification. A28-31.

Second, Teashot argues that the "according to the present invention" language in column 5 relates to only the first sentence of that paragraph, but not the second. Br. at 29-30. Defendants argued below that the "present invention" describes both sentences. A399, 711-712, 810-811, 818, 848-849, 977-978. Teashot **never** argued in response that the "present invention" describes only the first sentence. A605-634, 724-756, 779-954, 1218-1250, 1973-1979. In fact, Teashot admitted the **opposite** – that the "present invention" describes both sentences. A839, 920. As discussed in Section II, this Court should decline to consider Teashot's new argument, especially as it contradicts Teashot's earlier

22

admission.

On the merits, the passage itself belies Teashot's assertion:

> **According to the present invention**, a tea extraction container can be any container which includes **a sealed body** having at least one internal compartment for containing a tea composition.  **The sealed body** is constructed from a water-permeable material which allows a liquid (**e.g.**, water) to flow through the sealed body **into** the internal compartment such that the liquid contacts the tea composition, thereby extracting the tea composition into the fluid, and then exits the sealed body as a tea extract.  The water-permeable material suitable for construction of the sealed body can be any water-permeable material that is suitable for use with a food product, **such as** filter paper, permeable plastic, tight weave metal mesh, nylon and linen. The water-permeable material can be flexible or rigid.  **An example** of a flexible material is filter paper.  **An example** of a rigid material is tight weave metal mesh.  **In a preferred embodiment**, a tea extraction container is formed from filter paper.

A70, 5:39-55.

Nothing indicates that "the present invention" is discussed just in the first sentence, and that the second sentence describes only an embodiment.  In fact, the first sentence discusses "a sealed body" as part of that invention.  "**The** sealed body" is then further described in the second sentence, including the fact that the sealed body's "water-permeable material" allows flow of a liquid "into" the sealed body.  Thus the passage describes the invention as both the "tea extraction container" and the "sealed body constructed from a water-permeable material" that allows flow "into" the body.  A28-30.  By contrast, when the applicant wanted to describe other features as mere embodiments, he used words like "e.g.," "such as,"

23

"[a]n example," or "[i]n a preferred embodiment." His choice not to do so for the "sealed body" part of this passage shows an intent to limit the claims.

### 3.    Figure 4

Teashot suggests that Figure 4 and columns 7-8 of the specification contradict the district court's construction, arguing that they show a set of vertically-oriented "sealed bodies" that are allegedly closed at the top and with a "perforated base" at the bottom of each chamber. Br. at 4-5, 27, 36-37. Teashot misreads the specification.

The relevant passage states:

> In yet another embodiment of the present invention, a tea extraction system can be configured as a rigid container having multiple tea extraction containers connected to each other at the side of the sealed bodies, from top to bottom, around an axial member. Such an embodiment is illustrated for example, in FIG. 4. FIG. 4 illustrates a side-view of a tea extraction system in which three tea extraction containers (36), preferably formed of a rigid material, such as metal, are connected to one another by a connecting means (38) comprising an axial member (40) that allows the individual tea extraction containers (36) to be rotated around the axial member (40) independently of one another. For use in a coffee brewing device, the containers (36) are arranged to overlap from top to bottom, substantially as illustrated in FIG. 4.



**FIG. 4**

A71, 7:66-8:13 & Fig. 4.  Although the patent does not say so, it appears that the

top of each container is open (like the top of a bucket).[4]  A833.

The straightforward interpretation of Figure 4 is that it shows **not the sealed**

**body, but other portions of the tea extraction container**, specifically, open trays

with perforated bottoms into which one can place sealed bodies (like those in Figs.

1-3).  A975-976.  The passage Teashot quotes from column 3 (Br. at 5) discusses

the "tea extraction container" multiple times but never refers to a "sealed body."

A69, 3:43-63.

The other passage from columns 7-8 describes rigid containers into which

sealed bodies, like the pods of Figures 1-3, can be placed.  There is no indication

that the containers are "sealed"; indeed, Figure 4 shows gaps between them.

Teashot admits that the top container is not sealed and the water just pours into the

open top tray.  Br. at 36-37.  Similarly, the reference to "a perforated bottom" in

---

[4] If the top of each container were water-permeable material (like filter paper),
Figure 4 would be identical to Figures 1-3 in this respect.

column 3 (the patent's only use of the word "perforate") refers to perforations in the bottom of each tray that will allow tea extract to pass once it has already gone through the "sealed body" placed into each tray. Figure 4 thus does not show one or more "sealed bodies" but rather shows simply the "tea extraction container(s)" into which sealed bodies (e.g. pods) can be placed; accordingly, this figure is irrelevant to the construction of the disputed claim term.[5]

Teashot interprets this passage to mean that, in use, the system can slide and lock together, so as to remove the gaps between the containers. Br. at 4-5, 27, 36-37. But the specification does not disclose or even suggest a slide-and-lock mechanism. Teashot's interpretation thus would render the claims invalid on written description and enablement grounds. 35 U.S.C. § 112, ¶ 1. But even if Figure 4 functioned this way, then the "perforated bottom" (A69, 3:62-63) of the top container would lock into the top of the middle container, thus forming the top portion of the middle container. The same would occur with the "perforated bottom" of the middle container locking into and becoming the top of the lower

---

[5] Teashot also cites a single sentence in column 6. Br. at 5. That sentence discusses various ways of creating sealed bodies, such as "by the contact of the rims of two 'basket-shaped' metal mesh bodies which are connected to each other by a hinge," i.e., a tea strainer. A70, 6:15-17. This sentence does not refer to Figure 4, a "tea extraction container" with "**solid** sidewalls" and a "perforated bottom," but instead to constructing sealed bodies out of various water-permeable materials. A69, 3:61-63; A70, 5:50-55. Column 6 goes on to state that such "a hinged metal basket-and-lid enclosure" is an example where "substantially all of the surface area of the sealed body is water-permeable." A70, 6:18-23. Figure 4, with its "solid sidewalls," is not that. A69, 3:61-63.

container.  If this occurred, then the middle and lower containers would become "sealed bodies."  But the portions into which and out of which the fluid flows would still be "constructed of a water-permeable material," namely, the "perforated bottom[s]" of the containers.  Thus, this embodiment supports the district court's construction.

By contrast, the top container would not be "sealed."  Nothing would prevent tea from spilling out the open top.  Teashot suggests that the top container becomes "sealed" when contacting the brewing chamber of a coffee brewer (Br. at 4-5), but Teashot points to no evidence (intrinsic or extrinsic) that the top container mates with a coffee brewer such that a "seal" actually occurs.  The specification makes no suggestion that the top container would fit a brewer sufficiently tightly to become "sealed."  The container would have to be designed to fit a particular brewer, and the '672 patent has no disclosure of such a mating, again raising written description and enablement problems.  What the specification actually discloses is that the containers are arranged in a "vertical manner" when placed in the brewer, and would use gravity rather than sealing to keep the tea within the layers while the brewer is in operation.  A69, 3:49-51.

Regardless, the specification's arguably ambiguous disclosure as to one embodiment cannot overcome the claim language, the specification's discussion of the "present invention," and the unambiguous disclosure of every other

27

embodiment, which all support the district court's construction.  "This court's precedent is clear that a claim need not cover every disclosed embodiment."  Kruse Tech. P'ship v. Volkswagen AG, 544 F. App'x 943, 951 (Fed. Cir. 2013).

### 4.     The '335 Patent

Teashot's final argument on claim construction is that the prior art Fond '335 patent supports its construction.  Br. at 6-7, 18-21, 32.  This position is improper, for several reasons.

First, Teashot never argued Fond to the district court.  A605-634, 724-756, 779-954, 1218-1250, 1973-1979.[6]   As discussed in Section II, this Court should not consider it either.

Second, the '672 patent incorporates Fond as disclosing "[c]ontainers suitable for use as a tea extraction container in the present invention," not as disclosing the more specific "sealed body."  A70, 5:60-64.

Lastly, even if considered, Fond supports the district court's construction. As Teashot admits, the top and bottom of Fond's capsule are made of "permeable flexible plastic material," perforated with multiple small holes through which fluid flows.  Br. at 6-7; A571, 2:12-17; A572, 3:22-29.  Alternatively, the top can be "made of filter paper."  A571, 2:12-17.  The portions into which and out of which the fluid flows in Fond's capsule are water-permeable material, just like all of the

---

[6] The only reason Fond appears in the record (A425, 566-574), is that **Defendants** cited it, regarding a claim term not at issue on appeal.  A408-409.

28

embodiments in the '672 patent, which can be "any water-permeable material…, such as filter paper, [or] permeable plastic"  A70, 5:47-50.  Teashot's own diagram demonstrates that, like the '672 patent embodiments, Fond's capsule has many small perforations "carefully calculated to be large enough to allow the fluid to flow, yet small enough to prevent leakage of the tea leaves out of the holes."  A51.



**(Br. at 18.)**

As the district court observed, there is "a fundamental difference" between such materials and "a solid sheet of foil that has been punctured."  A51.

**B.    Defendants Do Not Meet the Limitation.**

> **1.    Noninfringement of Independent
> Claims 1 or 21, or Their Dependent Claims**

Independent claims 1 and 21 both require:

a tea extraction container…, comprising a sealed body… ,

wherein **said sealed body is constructed of a water-permeable material which allows flow of a fluid through said sealed body to produce a tea extract from said tea composition**.

Given the design of the accused K-Cup® packs, Teashot cannot establish infringement.  The district court construed the limitation as "the portions of the

sealed body into which fluid flows and out of which fluid flows are water-permeable material which allows flow of a fluid through said sealed body to produce a tea extract from said tea composition." A31.

The claim construction was dispositive. The accused K-Cup® packs do not meet the limitation "said sealed body is constructed of a water-permeable material." Specifically – as Teashot admitted – the portion of the sealed body into which fluid flows is not water-permeable. A159-160, 734, 1200-1206. Rather, the K-Cup® pack includes a **water-impermeable** foil lid which must be pierced by a needle before fluid may be injected through the needle into the inner compartment. The "portion[] of the sealed body into which fluid flows" is not constructed of a "water-permeable material." Accordingly, the accused product does not infringe.



**Foil lid and internal filter**



**Puncture hole in foil lid via which needle injects water into internal compartment**

A1086-1087, 1200.

Teashot **itself** admitted that "the foil lid of Defendants' K-Cups® [sic] is water-**im**permeable," and that fluid cannot flow through the foil lid until it is pierced. A734 (emphasis in original). Mr. Cooper, the '672 patent's inventor and

Teashot's owner, repeatedly made the same concession:

> Q  So this is the lid of the K-Cup, isn't it?
> A  It's the covering, yes, top, yes, top.
> **Q  Um-hum. This covering is water impermeable, right?**
> **A  If it's foil, it would be water impermeable, yes.**
> …
> A  If water fell on, it would roll off.
> Q  All right.  So if I were to open up this water and pour some water on it --
> A  It would fall right off.
> …
> Q  But the portion that's pierced by the needle is this top covering, correct?
> A  Correct.
> **Q  And we already discussed that that top covering is water impermeable, correct?**
> **A  Correct.  Right.**
> **Q  So this part of the K-Cup, that's a water impermeable covering, isn't it?**
> **A  Correct.**
> …
> Q  Correct me if I'm wrong, when you puncture the foil lid, the actual foil remains water impermeable, correct?
> A  The -- the foil around the hole, yes.
> Q  Yes.  The hole no longer has foil in it, correct?
> A  Correct.
> Q  Hence the hole.
> A  Right.
> Q  The water doesn't flow through the foil; it flows through an open space.  Correct?
> A  Correct.

A1101, 1201-1206.

With a water-impermeable lid, the district court correctly concluded that that

accused K-Cup® packs cannot infringe.  The district court explicitly **rejected**

Teashot's contention that the claims cover a device where "the top could be open

or made of **some other material**," i.e., a water-impermeable material.  A28.  The district court similarly rejected Teashot's argument that the foil lid is water-permeable because "[a]s the figure also illustrates, a needle pierces the foil lid and injects water into the filter cup."  A733-734.



The fluid does not flow through the foil lid (because the foil lid is water-impermeable), but rather flows within a needle after the needle pierces a hole in the lid.  Accordingly, because each accused K-Cup® pack only has a foil lid that is water-**im**permeable, none of them can infringe the asserted independent claims, as they do not meet the limitation "said sealed body is constructed of a water-permeable material".  Nor can they infringe the asserted dependent claims, which depend from claims 1 and 21.  35 U.S.C. § 112, ¶ 4.

While each case must be resolved on its own merits, it is nonetheless instructive that in the sole instance where this Court addressed this precise issue, it agreed with the district court.  See Contech Stormwater Solutions, Inc. v. Baysaver

Techs., Inc., 310 Fed. App'x 404 (Fed. Cir. 2009). This Court affirmed summary judgment of noninfringement based on the construction of "water-permeable" as "porous," and rejected the contention that this construction only requires a portion of the relevant surface to be "water-permeable." Id. at 407-408. A "person of ordinary skill in the art would recognize a distinction between a water-permeable surface and a water-impermeable surface with discrete openings." Id.[7]

Contech is highly relevant in that the construction there (as here) was based on the ordinary meaning of "water-permeable." See Contech Stormwater Solutions, Inc. v. Baysaver Techs., Inc., No. 07-358, 2007 WL 2872074, at *5 (D. Md. Sep. 25, 2007). Like Teashot, the plaintiff in Contech argued that "'water-permeable outer surrounding wall' of the basket only requires that the outer wall include 'at least one opening to permit [] water to infiltrate the basket.'" Id. Like the district court here, the district court in Contech rejected that "overbroad" and "idiosyncratic" interpretation of "water-permeable" and instead relied on the plain and ordinary meaning of the term as "porous." This Court should affirm the holding below in this case as it did in Contech. See Contech, 310 Fed. App'x at 407-408.

---

[7] Teashot suggested below that the court should not consider Contech because it is unpublished and non-precedential (A1240-1241), but citation to such opinions is allowed and appropriate. Federal Circuit Rule 32.1.

### 2.    Teashot's Position Would Render the Limitation "Water-Permeable *Material*" Meaningless.

As the district court found, a fundamental problem with Teashot's position is that it renders the limitation "constructed of a water-permeable material" meaningless.  A52.  The lids of the accused K-Cup® packs are constructed of a **water-impermeable** material, such that fluid cannot enter the pack until an inlet needle punctures a hole through the material.  Even then, the material of which the lid is formed remains water-impermeable foil.  The puncture allows water into the pack through the needle, but does not make the lid material water-permeable.  Teashot's attempt to argue the contrary would render the claim limitation meaningless, as everything can be pierced and thus, in Teashot's view, would be "permeable."

At issue is not what has been done to the lid material, but what the material **is**.  Here it is undisputedly a water-impermeable plasticized foil.  A159-160, 734, 1200-1206.  Teashot argues that piercing a hole through such material turns it into something permeable.  However, this argument ignores the fact that the asserted claims all require that the sealed body be "**constructed** of a water-permeable material."  A76, claim 1; A77, claim 21.  Defendants undisputedly **construct** the lids of their K-Cup® packs of an impermeable foil.  Subsequent piercing during use does not change that fact.

Teashot's infringement theory is also contrary to express Federal Circuit

law.  Under Teashot's definition, the limitation would not exclude anything –
because **everything** can be pierced somehow, and thus would be water-permeable.
A1096-1097.  Teashot admitted as much at deposition.  A1101, 1201-1204.  This
Court has expressly held that such a construction – under which a particular claim
term "would never exclude any device" – cannot be correct.  See Bicon, Inc. v.
Strauman Co., 441 F.3d 945, 951 (Fed. Cir. 2006) (affirming summary judgment
of noninfringement because patentee's proposed construction "would never
exclude any device" and would render the claim term meaningless); see also Deere
& Co. v. Bush Hog, LLC, 703 F.3d 1349, 1356 (Fed. Cir. 2012) (courts cannot
"'vitiate' a claim element").

This Court's recent decision in Novatek, Inc. v. Sollami Co., No. 2013-1389,
2014 WL 1229547 (Fed. Cir. Mar. 26, 2014), which issued after the district court's
Orders (A21-63), is instructive.  This Court affirmed the district court's
construction of the claim term "said bit being mountable in a first bore" of a bit
holder as requiring that the bit also be "removable" from the bit holder.  Novatek,
2014 WL 1229547, at *7-*8.  Even though the "bit" of Novatek's accused product
was brazed (welded) directly to the bit holder, and could not be removed without
either breaking the accused product or melting the brazed joint, the patentee
Sollami nonetheless maintained that Novatek met that claim limitation.  Id. at *11-
*12.  But as the patent focused on quickness and ease of removability of the bit,

the "process of heating and melting the brazed joint of Novatek's device to render

it removable is not the type of removability the patents contemplate." Id. at *12.

Thus this Court observed that

> adopting Sollami's position would detract from "removable" as a
> skilled artisan would interpret "bit" based on the patents' disclosures.
> **Anything** with adequate force can be "removable," but such
> unbounded interpretation of the term flounders on the shoals of
> reality.  No reasonable jury would find "removable" as construed by
> the district court to read on Novatek's accused device.

Id.

Here, Teashot's position that the foil lid is "water-permeable" because it can

be pierced, which would make any material "water-permeable," is similarly

"unbounded," "flounders on the shoals of reality," and should be rejected.

Tellingly, Teashot's brief does not deal directly with this point.  Instead,

Teashot attempts to sidestep the issue by trying to distinguish Ethicon Endo-

Surgery, Inc. v. U.S. Surgical Corp., 93 F.3d 1572 (Fed. Cir. 1996), cited by the

district court.  Br. at 34-36; A52.  Contrary to Teashot's suggestion, Ethicon was

not the "exclusive" support the district court cited.  Br. at 34; A52.  Moreover,

Teashot suggests this case is different from Ethicon only because the district court

allegedly imported an improper temporal limitation.  Br. at 35-36.  As discussed

below, the district court did not.

But focusing on the time when the accused K-Cup® pack is in the brewer

and the brewer is operated, it is undisputed that the inlet needle pierces the pack's

top foil lid. Teashot does not (and cannot) dispute that under its position **any** material becomes "water-permeable" if the material is punctured, and that all materials can be punctured. Id. As a result, Teashot's position makes the phrase "constructed of a water-permeable material" so limitless as to be "meaninglessly empty," just as the phrase "connected to" in Ethicon would become meaningless if it allowed any type of direct or indirect connection by the claimed lockout mechanism to any part of the surgical stapler, rather than to the longitudinal slots required to perform the function recited in the claim. Ethicon, 93 F.3d at 1575, 1578. The present case is like Ethicon, Bicon, and Novatek, and this Court should likewise reject Teashot's proposed construction which would make the claim term so unbounded as to never exclude anything.

### 3. The District Court's Alleged Supplemental Claim Construction

Teashot incorrectly alleges that the District Court performed additional claim construction on summary judgment. Br. at 1, 20-21, 31-37. First, Teashot argues that for "purposes of evaluating infringement, the only time the accused K-Cups must include water-permeable material which allows fluid to flow through the sealed body is when they are being used in a brewer, and it is undisputed that, at that time, the foil lid of the K-Cup is pierced to allow fluid to flow into the sealed body." Br. at 34. Teashot further alleges that the district court applied a temporal limitation in stating that the K-Cup® pack's lid is constructed "in the first

instance" of water-impermeable material.  Br. at 31-36; A52.[8]

But Teashot's argument reads the claim term "constructed" out of existence. The district court's language confirmed that "constructed" must be given meaning and that "construction," under its ordinary meaning, refers to what the accused infringers (in this case, Defendants) allegedly did when they constructed the accused K-Cup® pack.  That is what "constructed" requires.  As Teashot admitted, "construct" means to "make by fitting parts together; build, form," and "to make or form by combining or arranging parts or elements."  A734-735.  Otherwise, the claim could have omitted the word "constructed."  Nothing Defendants do constitutes "constructing" a water-permeable pack.  The only packs Defendants "construct" are water-impermeable.

The district court merely explained how its interpretation applies to the accused products.  See Fujitsu Ltd. v. Netgear Inc., 620 F.3d 1321, 1337 (Fed. Cir. 2010) (where district court applied timing portion of claim language in granting

---

[8] Teashot's only cited case (Br. at 32-34), Exxon Chem. Patents, Inc. v. Lubrizol Corp., 64 F.3d 1553 (Fed. Cir. 1995), was different.  The claims there were directed to a lubricating oil composition.  Exxon, 64 F.3d at 1556.  Because those claims were straightforward composition claims, this Court found that it was error to assess infringement only as to the product used by consumers; instead, intermediate compositions manufactured by the defendants could also infringe the claims.  Id. at 1558.  Here, by contrast, the claims require that the sealed body be "constructed" of a water-permeable material.  That claim language, which has no analogy in the Exxon claims, requires consideration of whether Defendants "constructed" or made the accused K-Cup® packs of water-permeable material, which they did not.

summary judgment of noninfringement, it "did not amend its construction, it simply looked to additional elements of the claim that [the patentee] must show to establish infringement.").

Teashot next alleges that the district court imported the term "directly" into the claim by noting that the accused products do not pass water "directly through the foil lid," but instead the brewer inserts water within a needle after puncturing the lid.  Br. at 36-37; A52 n.3.  Again, the district court merely explained how the claim term "through" requires that the fluid flow through the water-permeable material, rather than through some other structure.  And again, Teashot's position reads the words "water-permeable material which allows flow of a fluid through said sealed body" out of the claim.

Teashot's remaining arguments rely on Figure 4, Fond, and <u>Ethicon</u>.  Br. at 31-37.  As discussed above, those materials support Defendants.

## IV.    **Teashot Waived Any Claim Under the Doctrine of Equivalents.**

### A.    **Teashot Violated the Scheduling Order.**

Teashot raises several circuitous arguments for why it allegedly had no notice of the requirement to provide its DOE theory in its infringement contentions, nor of the district court's order finding Teashot waived DOE by failing to do so.  Br. at 37-41.  But the fundamental issue is simple: The district court ordered Teashot to provide its contentions by a certain date, and Teashot was

bound by that order. Teashot thus had ample notice that it could not proceed to litigate any infringement issue not so disclosed. If such an outcome is viewed as a "sanction," the district court plainly had the power to impose it for any failure to obey that order. Though perhaps a more apt view is simply that Teashot waived any infringement position not included in its timely disclosure.

The district court's decision was correct and does not approach an abuse of discretion, especially given Teashot's repeated waiver of DOE over the course of nearly a year. Teashot was well aware of the court's scheduling order, yet failed to timely assert DOE at all. It also failed to articulate any DOE theory until well after the close of fact discovery, and nearly a year after the infringement contentions deadline.

The parties jointly proposed a pre-Markman Scheduling Order, which was adopted by the district court. A301-321, 343-358. The pre-Markman Scheduling Order required the parties to exchange infringement and invalidity contentions, claim charts, and supporting documents. A309, 335-336, 351-352. The district court's pre-Markman Scheduling Order did not allow amendments to the contentions. Id. Nor did it call the contentions "preliminary." A351. In accordance with the Order, Teashot provided its infringement contentions on May 1, 2012. A1100, 1142-1146. Teashot did not assert DOE. Id.

Teashot was bound by its contentions, because the district court ordered

them to be made by a certain date, and the court had the right to refuse to accept contentions made after that date. The point of ordering a disclosure of something is so the other party has notice of it. Accordingly, as long as Teashot had notice **that its disclosures were due on a certain date**, it cannot plausibly contend that the district court lacked the power to limit it to what it disclosed on that date. A district court "may impose any just sanction for the failure to obey **a scheduling order**, including refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence." O2 Micro, 467 F.3d at 1363. See Commodity Futures, 316 F. App'x at 713-714 (affirming exclusion of evidence for failure to obey scheduling order). Teashot had notice of its obligations, and failed to meet them. Hence its arguments about Rules 37 and 83 fail, and this Court need not reach the question of Rule 26(e).

Teashot's failure was not harmless; it prejudiced Defendants. Neither the pre-Markman Scheduling Order, nor a later post-Markman Scheduling Order, allowed amendments to contentions. A351-352, 1021-1023. Nevertheless, without leave of the district court, Teashot served "revised" contentions on March 7, 2013. A1101, 1147-1150. Even these did not allege that the accused products were covered by DOE. Id. Not until the day that fact discovery closed, April 19, 2013 (A1022) did Teashot (again without leave) purport to provide yet another set

41

of revised contentions that, for the first time, included a bare allegation of DOE. A1101, 1151-1172. Even that document, however, provided no explanation of the basis for that allegation. Id.

Teashot did not explain the basis until two weeks after the close of discovery, on April 30, 2013, when it served an expert report of Dr. Maynes, which for the first time set forth an extended, fourteen page discussion of the basis for Teashot's DOE allegations. A1101, 1414-1427.

As a result, Defendants did not know the content of Teashot's DOE allegations until nearly a year after the scheduling order's deadline, and well after fact discovery closed. As the district court noted, "Defendants were denied the ability to conduct any discovery on this alternative theory of infringement: they were precluded from propounding any written discovery or to question Plaintiff's witnesses on the issue at their respective depositions." A59-60 See Woods v. DeAngelo Marine Exhaust, Inc., 692 F.3d 1272, 1283 (Fed. Cir. 2012) ("The boundaries of the district court's discretion are defined by unfair, prejudicial harm to a party deprived of an adequate opportunity to present its case."; upholding exclusion of late-disclosed prior art in part due to prejudice to opposing party). Defendants were unable to depose the inventor as to whether the function-way-result test was met; to obtain discovery on the different functions of foil (to keep air and water out) versus water-permeable material (to let water pass); to determine

whether it was known that water-permeable materials were not interchangeable with puncture-able ones; or to introduce into the record additional prior art, if punctured containers are equivalent to sealed ones.

Now, for the first time on appeal, Teashot suggests that it was unable to come forward with its DOE theory earlier because supposedly relevant depositions did not occur until Spring 2013.  Br. at 12, 40-41.  Teashot does not attempt to link these depositions to its alleged inability to disclose its DOE position.

Moreover, Teashot did not give even that terse explanation for its failure to the district court: "Plaintiff has provided no explanation for why it failed to disclose this theory earlier."  A57.  Teashot may not hold back its arguments on an issue (however sparse) from the district court, and then have this Court consider them.  <u>See</u> Section II above.

### B.    <u>The District Court Did Not Violate Rule 83.</u>

While this Court need not reach Teashot's argument that the district court violated Rule 83 by discussing Rule 26(e) in the summary judgment order, the issue may be disposed of briefly.  The scheduling order did not explicitly state that the contentions were subject to Rule 26(e)'s supplementation obligation, but it did state that they were due on May 1, 2012.  Teashot was bound by that date, and the district court had discretion to enforce its order.

This Court regularly finds no abuse in the exercise of such discretion,

regardless of whether the disclosure was required by court order, local rule, or contention interrogatory.  See Woods, 692 F.3d at 1281-1282 (noting parallel between court orders, local rules, and contention interrogatories, and affirming district court's preclusion of prior art evidence because of failure to timely and adequately supplement contention interrogatory answer).[9]

Teashot's reliance on Mass. Inst. of Tech. v. Abacus Software, 462 F.3d 1344 (Fed. Cir. 2006), is misplaced.  Br. at 38.  In that case, the initial scheduling order set a deadline for "**preliminary** infringement contentions," with which MIT complied.  Mass. Inst. of Tech., 462 F.3d at 1357.  The district court later *sua sponte* noted that the "preliminary" contentions would be considered "final" and could be amended by court order only after a showing of good cause.  Id. at 1358. The district court found that MIT had not shown good cause for subsequent amendment.  Id.  On appeal, this Court held that MIT lacked sufficient notice under Rule 83 of the changed rule.  Id. at 1359.

By contrast, here the scheduling order did not call the contentions

---

[9] See also Speedtrack, Inc. v. Endeca Techs., Inc., 524 F. App'x 651, 659 (Fed. Cir. 2013) (no abuse of discretion where district court excluded DOE argument that was not timely disclosed in infringement contentions required under local rules, and no good cause shown for moving to amend late); Kruse Tech. P'ship v. Volkswagen AG, 544 F. App'x 943, 952-954 (Fed. Cir. 2013) (no abuse of discretion where district court denied motion to amend infringement contentions required under local rules, and no good cause shown for late motion).

"preliminary."[10]  A351.  The district court did not surprise Teashot with a new

constraint.  Teashot had fair notice that May 1, 2012 was the deadline for any and

all infringement contentions.  The district court would have been well within its

rights not to allow any supplementation.  If anything, treating the contentions as

subject to Rule 26(e) supplementation is lenient to Teashot, which could have been

precluded from any supplementation after the initial deadline.  A55.  The district

court appropriately sanctioned Teashot for failing to even attempt to do so during

fact discovery, thus harming Defendants, A57-A61, if it is even a 'sanction' at all

rather than simply a waiver by Teashot by deliberately omitting DOE from its

timely infringement contentions.

### C.    Teashot's Pretrial Order Argument Is Incorrect.

Teashot incorrectly represents that "[n]either the Defendants nor the court

raised any objection to the inclusion of Teashot's complete DOE infringement

theory in the Final Pretrial Order," thus allegedly waiving their waiver argument.

Br. at 14, 39.  In fact, Defendants explicitly stated in the Final Pretrial Order that

"Teashot waived any doctrine of equivalents argument, both at the pleadings stage

and by not asserting or substantiating the theory during the course of discovery."

A2471.  Defendants also incorporated into the Order their prior summary judgment

papers, including the portions regarding Teashot's waiver of its DOE theory.

---

[10] Teashot titled its contentions "Preliminary" (A1143), but a party may not
unilaterally alter a court's order.

A1092-1094, 1661-1663, 2473-2474.  Further, Defendants objected to Teashot's restatement of its entire case in the Order as "inappropriate," including the portion on DOE.  A2470.

Teashot's case on this point, <u>Wilson v. Muckala</u>, 303 F.3d 1207 (10th Cir. 2002), held that a defendant was **not** required to object to a (cursory) new theory the plaintiff raised in the final pretrial order.  <u>Wilson</u>, 303 F.3d at 1215-1216. While acknowledging that the final pretrial order supersedes the pleadings and controls the issues for trial, the Tenth Circuit does not expect to see new claims or defenses "appearing for the first time in the pretrial order….  Such a practice deprives one's adversary of fair notice, possibly discovery, and the opportunity for motion practice, and is subject to abuse."  <u>Id.</u>  If failure to object did not lead to waiver in <u>Wilson</u>, Defendants' multiple objections here *a fortiori* cannot lead to waiver either.

## V.  The Court Should Affirm Summary Judgment of <u>Noninfringement on Three Alternative Grounds</u>.

The Court need go no further.  The district court's rulings were correct. Should this Court discern some error, however, Defendants request that this Court affirm summary judgment of noninfringement on three alternative grounds.[11]  First,

---

[11] <u>See</u> <u>Lion Raisins, Inc. v. United States</u>, 416 F.3d 1356, 1368 (Fed. Cir. 2005) ("[a]n appellate court may affirm the [trial] court on a ground not selected by the [trial] judge so long as the record fairly supports such an alternative disposition"); <u>Aventis Pharma S.A. v. Hospira, Inc.</u>, 637 F.3d 1341, 1343 (Fed. Cir. 2011)

this Court should find that DOE does not cover the accused products.  Second,

Defendants do not meet the stipulated construction of the separate claim limitation

"a sealed body having at least one compartment…"  Third, under the correct

construction, Defendants do not meet the limitation "a tea composition comprising

from about 2 to about 10 grams…."  The first alternative ground relates solely to

noninfringement under DOE (and thus to the second issue on appeal stated earlier

in this brief), while the other two alternative grounds relate to noninfringement

both literally and under DOE (and thus to the first two issues on appeal).

### A.    The Doctrine of Equivalents Does Not Cover the Accused Products.

Even if Teashot had not waived DOE, and the Court were to reach that issue,

the doctrine does not change the outcome.  The K-Cup® pack's water-

**im**permeable foil lid is not "equivalent" to a permeable one under the applicable

Federal Circuit tests discussed below.  In fact, this Court has repeatedly found that

the doctrine of equivalents cannot apply to make a claim limitation (e.g. "water-

permeable") cover its exact antithesis (e.g. "water-impermeable").

Under DOE, "a product or process that does not literally infringe upon the

express terms of a patent claim may nonetheless be found to infringe if there is

'equivalence' between the elements of the accused product or process and the

---

("Attorneys are free to devote as much of their responsive briefing as needed to…
alternative grounds for affirming the judgment.").

claimed elements of the patented invention." Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co., 520 U.S. 17, 21 (1997). "An element in the accused product is equivalent to a claim limitation if the differences between the two are 'insubstantial' to one of ordinary skill in the art." Wavetronix LLC v. EIS Elec. Integrated Sys., 573 F.3d 1343, 1360 (Fed. Cir. 2009). To make this determination, courts have applied the "function-way-result test... which asks whether an element of an accused product performs substantially the same function in substantially the same way to obtain substantially the same result as an element of the patented invention." Siemens Med. Solutions USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc., 637 F.3d 1269, 1279 (Fed. Cir. 2011). "Where the evidence is such that no reasonable jury could determine two elements to be equivalent, district courts are obliged to grant partial or complete summary judgment." Warner-Jenkinson, 520 U.S. at 39 n.8.

In particular, "courts properly refuse to apply the doctrine of equivalents 'where the accused device contain[s] the **antithesis** of the claimed structure.'" Deere, 703 F.3d at 1356. "In such a case, application of the doctrine of equivalents would 'vitiate' a claim element[, such that] no reasonable jury could determine two elements to be equivalent." Id.; see also Moore U.S.A., Inc. v. Standard Register Co., 229 F.3d 1091, 1106 (Fed. Cir. 2000) (finding noninfringement under DOE because "it would defy logic to conclude that a minority – the very antithesis of a

majority – could be insubstantially different from a claim limitation requiring a majority, and no reasonable juror could find otherwise."); <u>Sage Prods.</u>, 126 F.3d at 1424-1425 (affirming summary judgment of noninfringement under DOE because patent claimed slot at the top of container, while accused product placed slot inside container); <u>Planet Bingo, LLC v. Gametech Int'l, Inc.</u>, 472 F.3d 1338, 1345 (Fed. Cir. 2006) ("before" cannot be equivalent to "after"); <u>Asyst Techs., Inc. v. Emtrak, Inc.</u>, 402 F.3d 1188, 1195 (Fed. Cir. 2005) ("mounted" cannot be equivalent to "unmounted"); <u>Skyline Zipline Global, LLC v. Domeck</u>, 922 F. Supp. 2d 1130, 1141 (D. Haw. 2013) (keeping lines apart cannot be equivalent to bringing lines together).

The accused K-Cup® pack lids are just such an "antithesis" to the claimed structure. Water **im**permeable material cannot be equivalent to water permeable material. Nor can a pack that has been **pierced** (twice) to permit the flow of water be equivalent to a "sealed body." Even under the function-way-result test, they are not equivalent. The functions are different. The water-permeable material at the inlet portion of the "sealed body" of the claimed invention performs the function of uniformly dispersing hot water over the "sealed body" in order to produce an even dispersal of fluid. The K-Cup® pack's impermeable foil lid does not disperse the water before it contacts the tea composition, but instead performs the function of protecting the tea composition inside from spoilage, due to oxidation or moisture.

A51. The way the fluid enters the pack is completely different from the claim language (one is by being injected through a needle, the other is by flowing through a permeable material). Nor does it have the same result of "allow[ing] fluid to flow through" the sealed body, as the district court determined:

> The problem with Plaintiff's construction is that the Claim language requires the fluid to flow ***through*** a ***sealed*** body. If the Claim said only that fluid had to flow through a water permeable material, then it could encompass a device in which the fluid merely exited by way of water permeable material (**the top could be open or made of some other material**). Or if the Claim said that fluid had to flow through the tea composition (rather than through the sealed body), then the portions of the sealed body that were constructed of a water permeable material would not matter. However, because the Claim requires that the ***water permeable material*** allow flow of a fluid ***through*** the ***sealed body***, the portions of the sealed body into which the fluid flows and out of which the fluid flows must be made of water permeable material.

A28 (italicized emphasis in original). Fluid flowing through a water-permeable membrane is not the same result as creating a hole in a water-impermeable membrane by inserting a needle, and then injecting water through the needle.[12]

Indeed, Teashot's position proves too much – it vitiates the "permeable" requirement and leads to the absurd result that **everything** is water-permeable (because a hole can always be pierced in it), and thus that **nothing** is water-impermeable. Mr. Cooper admitted as much:

Q  Is this table water permeable?

_____

[12] A more detailed discussion of the function-way-result test is at A1252, 1268, 1299-1307, 1664, 1970-72.

A  No.

Q  What if I drilled a hole in it?

A  Then water would run through that hole.

Q  So are you suggesting that anything becomes water permeable if it's pierced?

A  Water permeable in the sense that it allows water through, yes. If there is a hole in there, it would allow water through, correct.

Q  So when you punch a hole in anything, it becomes water permeable; is that right?

A  Yes.

Q  What about a sheet of solid steel; is that water permeable just because I punch a hole in it?

A  Maybe we're getting mixed up here, but water permeable means -- my understanding of the question, if there's a hole in it, the water can go through the hole.  Does it mean the rest of the steel was water permeable? No. No. It just means that where that hole is, the water can run through, making that portion of the steel water permeable.

…

Q  Is everything water permeable so long as it can have a hole punched in it?

A  I'm getting -- the water permeable, if you mean permeable as plural, then, no, it's just where that hole is that -- that's where the water will go through, making that particular substance, whatever it is, the table, the steel, the K-Cup, water permeable at that point.

A1101, 1201-1204.

But "permeable" cannot be expanded to cover its exact opposite, "impermeable," under clear and consistent Federal Circuit law.  Expanding "water-permeable material" to include an impermeable foil lid would impermissibly vitiate the limitation "water-permeable."  See, e.g., Deere & Co., 703 F.3d at 1356 (DOE cannot be allowed to "'vitiate' a claim element").  Hence the K-Cup® packs do not infringe under DOE.

Teashot may argue that Deere and Brilliant Instruments, Inc. v. GuideTech,

LLC, 707 F.3d 1342 (Fed. Cir. 2013) prevent summary judgment.  They do not.

Deere and Brilliant simply warn that claim vitiation is not an exception to DOE, but is "instead a legal determination that the evidence is such that no reasonable jury could determine two elements to be equivalent."  Deere, 703 F.3d at 1356.

That is precisely the situation here: No reasonable jury could determine an impermeable material to be equivalent to a permeable one.  Indeed, "[t]he vitiation concept **has its clearest application where the accused device contain[s] the antithesis of the claimed structure**."  Brilliant, 707 F.3d at 1347.  Courts have continued to grant summary judgment of noninfringement under DOE after these cases.[13]  See also A1663-1664.

### B.    Defendants Do Not Meet the Stipulated Construction of "a Sealed Body Having at Least One Compartment…."

Even if the top lid of the K-Cup® pack were considered "water-permeable material" once pierced (it is not), the accused products do not meet the **separate** limitation of "a sealed body having at least one compartment, said internal compartment containing said tea composition."  The parties stipulated, and the district court held, that this term means "at least a portion of a tea extraction

---

[13] See, e.g., Kruse, 544 F. App'x at 955-956 (claimed combustion duration is not equivalent to 23%-48% of said duration); Packless Metal Hose, Inc. v. Extek Energy Equip. (ZHEJIANG) Co., Ltd., No. 09-265, 2013 WL 682845, at *7-*8 (E.D. Tex. Feb. 22, 2013) (summary judgment of noninfringement under DOE, as patents treated "passages" and "channels" as markedly different); Skyline Zipline Global, LLC v. Domeck, 922 F. Supp. 2d 1130, 1141 (D. Haw. 2013) (same regarding keeping lines apart versus bringing lines together).

container that forms an internal compartment, or space, which **completely contains the tea composition and prevents the tea composition from escaping** from the internal compartment." A25.

Prior to piercing, the K-Cup® pack is "sealed" (water- and air-impermeable). A1299. But once the pack is pierced, it ceases to "completely contain[] the tea composition from escaping from the internal compartment." Id. In fact, tea particles readily come out the top hole. A1273-1279, 1298-1299.



**Dry Tea Escaping K-Cup® Pack**



**Wet Tea Escaping K-Cup® Pack**

Even during operation of the brewer, without an O-ring around the needle (the O-ring is not part of the accused pack) brewing can result in water and tea particles escaping through the pierced hole. A1299.



**Tea Particles Escaping Accused K-Cup® Pack During Operation**



**Tea Particles in Tea Beverage Brewed from Accused Tea K-Cup® Pack**

Further, the Keurig brewer inlet needles have water channels that are a minimum of 2 mm wide. A1102, 1207-1208, 1212-1215. That is much larger than the claimed particle size range of 0.40 mm-0.75 mm. A76, claim 1; A77, claim 21. Tea particles thus can and do escape through the holes of inlet needle even when the O-ring is present; for example, positive pressure inside a K-Cup® pack can force tea up the needle. A1297-1298. In short, the K-Cup® pack cannot simultaneously be pierced to allow water to enter and still be "sealed." A1299.

As to this missing limitation, like the prior one, Teashot has waived DOE (see above), and in any event that doctrine would not save Teashot. Again, the function, way and result between the claim term and the accused products are antitheses, and no reasonable jury could find that they are substantially the same. While in use (after piercing), the K-Cup® pack does not function to contain the tea and prevent it from escaping. Nor does the K-Cup® pack operate in the same way as claimed. Some tea escapes, and to the extent it does not, gravity and pressure keep tea in the pack, not the pack's structure. The accused products also do not achieve the same result. Once the needle pierces the lid, the lid leaks tea.[14]

---

[14] A fuller discussion of the function-way-result test is at A1304-1306.

## C.    The Defendants Do Not Meet the Limitation "a Tea Composition Comprising From About 2 to About 10 Grams…."

### 1.    This Court Should Alter the District Court's Construction.

The district court construed the phrase "a tea composition comprising from about 2 grams to about 10 grams of tea having a particle size of from about 0.40 mm to about 0.75 mm" in the asserted independent claims to mean "a tea composition including at least from about 2 grams to about 10 grams of tea that has a particle size of from about 0.40 mm to about 0.75 mm."  A35-41.  This Court should alter that construction, as the claim language, specification, and the applicant's admissions in a related European prosecution all limit this term, and require that substantially all of the tea in the sealed body be within the particle size range.

While this limitation begins with the open-ended term "comprising," appearing before the 2 gram-10 gram weight limitation, it is followed by the close-ended term "having," which appears before the particle size range.  A76, claim 1; A77, claim 21.  A person of ordinary skill would understand the word "having" as requiring that substantially all of the items in a category have the feature that comes after the word "having."  The person would not understand this term to suggest that the feature is optional.

The general understanding supports this construction.  Dictionaries define "having" as a closed term that requires a feature.  See Webster's 3rd New Int'l

Dictionary (1993) ("to consist of (as all one's elements or constitute parts)"); The

American Heritage Dictionary, 2d College ed. (1991) ("to possess as a

characteristic, quality, or function").  A425, 575-581.  The case law also indicates

that "having" is a limiting term.  See Nat'l Credit Union Admin. v. First Nat. Bank,

522 U.S. 479, 502 (1998) (noting that phrase "persons having February 29th as a

wedding anniversary" "narrow[s] the relevant universe in an exceedingly effective

manner"); Pieczenik v. Dyax Corp., 76 F. App'x 293, 296 (Fed. Cir. 2003)

(rejecting patentee's argument that "having" was "open-ended" and equivalent to

"comprising").

    The '672 specification also supports Defendants' construction:

> **According to the present invention**, the tea or herb used in a tea
> composition **of the present invention is of a particle size** (i.e. length
> of leaf cut) that allows for good extraction of the tea and reasonable,
> but not excessive, expansion of the tea leaves or herbs during the
> extraction process in a coffee brewing device.  **Prior to the present
> invention**, it was not appreciated that **tea and/or herbs of a different
> particle size than the ranges disclosed herein**, when extracted in a
> coffee brewing device, **will clump and/or overexpand to block the
> flow of water through the tea**.  This clumping or overexpansion
> results in weak, colorless, and flavorless tea extracts.

A72, 9:15-25.  This passage indicates that the "present invention" requires a tea

composition that "is of a particle size" within the range claimed, not partly inside it

and partly outside.  Moreover, the inclusion of tea outside the particle size range

caused the invention not to work, as the tea particles clump and over-expand,

blocking water flow and preventing the formation of good tea extracts.  Cf. Marine

Polymer Techs., 672 F.3d at 1359 (applicant's repeated description of "the present invention" can limit claims).

In addition, every claimed embodiment in the specification describes tea compositions where substantially all of the tea is within the range. For example, the next portion of column 9, lines 26-51, describes various embodiments where substantially all the tea is within the particle size ranges. See also A68, 2:52-54, 2:64-3:33; A69, 4:1-22, 4:46-61; A71, 8:14-27; A73, 11:24-42; A74, 14:30-A76, 17:30.

The specification does disclose two embodiments that are outside the claimed particle size range: an example where "some loose tea leaves can have a particle size of at least 1 cm [10 mm]," and "[i]n another embodiment…, loose leaf teas having a particle size of up to 3.5 cm [35 mm] can be used." A72, 9:26-31, 9:49-51. The district court erroneously believed that these are examples of the invention where not substantially all of the tea in the sealed body is within the range. A40. But these embodiments **are not claimed**. Their maximum particle sizes are well outside even the broadest claim construction – indeed, they are **13 times and 46 times the maximum claimed particle size** of 0.75 millimeters. For whatever reason, the specification discloses a few embodiments that are outside the claims. Such embodiments are dedicated to the public. See PSC Computer Prods., Inc. v. Foxconn Int'l, Inc., 355 F.3d 1353,1360 (Fed. Cir. 2004) ("The disclosure-

dedication rule requires an inventor who discloses specific matter to claim it….

Otherwise, that matter is dedicated to the public").

The prosecution history confirms this conclusion. Teashot[15] owns a

counterpart European Patent that claims priority to the '672 patent, European

Patent No. 1054610 B1 (the "'610 patent"). A425, 491-510. The '610 patent

contains the same limitations to the '672 patent regarding tea weight and particle

size. A502-503, claim 1.

The '610 patent was subject to an opposition proceeding. As Teashot itself

acknowledges (A153-156), the European Patent Office ("EPO") allowed the

claims only because it accepted Teashot's argument that none of the cited prior art

disclosed **exactly** 2-10 grams of tea where **substantially all of the tea was exactly**

**within the claimed particle size range** in the same sealed body. A425, A525-

528.

Crucially, Teashot's successful brief in the EPO opposition adopted **exactly**

**the claim construction Defendants propose**. In discussing the last limitation of

claim 1, which is the same as the limitation at issue here, Teashot stated:

> [T]his claim specifies that **the tea in the tea composition**… **must**
> **have** a **particle size of between 0.4 mm and 0.75 mm** and must be
> present in an amount of **at least 2 grams and no more than 10**
> **grams**….
> [C]laim 1 requires that **substantially all of the tea particles in the**
> **tea composition** be between about 0.40 and 0.75 mm in size and

---

[15] Or Cooper, Teashot's sole owner and the '672 patent's sole inventor.

> **that the tea in the tea composition has a <u>total weight</u> of between about 2 and about 10 grams.**

A425, 536.  Only by adopting a construction that "substantially all" of the particles in the sealed body are between 0.40 and 0.75 millimeters, and that the total weight of the tea not exceed ten grams, was Teashot able to obtain allowance.

Yet the district court's construction lets Teashot walk away from its prior position.  As construed, the claim limitation allows many (or even most) of the tea particles to be outside the range, and allows the total amount of tea to exceed ten grams.  The law does not allow such a strategic retreat.  <u>See</u> <u>Chimie v. PPG Indus., Inc.</u>, 402 F.3d 1371, 1384 (Fed. Cir. 2005) (claims should not be "construed one way in order to obtain their allowance and in a different way against accused infringers."); <u>Phillips</u>, 415 F.3d at 1317 ("The purpose of consulting the prosecution history in construing a claim is to exclude any interpretation that was disclaimed during prosecution.").

In addition, the construction makes no sense.  For example, assume one has a kilogram of tea in a sealed body (e.g. if one were making a large batch of iced tea).  998 grams of the tea in the sealed body is two centimeters or more in particle size, and well outside the claim under any interpretation.  Only 2 grams of the tea has a particle size between 0.40 and 0.75 millimeters.  Yet even though 99.8% of the tea is outside the claimed particle size, under the district court's construction the tea is still covered by the claim.

Such an embodiment fails to perform any of the functions of the invention. The overwhelming number of "too-large" particles will clump or overexpand to block the flow of water, resulting in weak, colorless, and flavorless tea extract. A72, 9:15-26.  Indeed, during the EPO prosecution Cooper submitted two declarations where he tested various, far less extreme examples of tea compositions, where most of the tea was within the claimed range, but some was outside.  A425, 544-565.  He concluded that such tea compositions were inoperable.  Id.

The district court declined to consider Teashot's EPO statements, because it (mistakenly) thought that "statements made during prosecution of foreign counterpart [patents] are irrelevant to claim construction."  A39 n.3.  But as this Court recently clarified, "statements made before foreign patent offices are sometimes relevant to interpreting the claims."  Starhome GmbH v. AT & T Mobility LLC, 743 F.3d 849, 858 (Fed. Cir. 2014) (relying on applicant's arguments from related European application in construing claim term).  "This court has also considered statements made before a foreign patent office when construing claims if they are relevant and not related to unique aspects of foreign patent law."  Apple Inc. v. Motorola, Inc., No. 2012-1548, 2014 WL 1646435, at *16-*17 (Fed. Cir. Apr. 25, 2014) (relying on statements in Japanese application to construe U.S. claim where statements "could not be clearer," were consistent with

the claims and the specification, and patents were related, had identical specifications, and contained identical claims).

This Court's "caution[] against **indiscriminate** reliance on foreign file histories" is based not on any fundamental rule that foreign file histories are irrelevant, but instead on the "varying legal and procedural requirements for obtaining patent protection in foreign countries." Starhome, 743 F.3d at 858.

No varying foreign requirements are present here. The '672 and '610 patents have the same inventor, and the '610 patent claims priority to the '672 patent via a PCT application. A64, 492. The patents feature the same claim limitation. A76, claim 1; A536. The patents have materially the same specification. A64-76, 492-502, 508-510. As discussed above, the statement is consistent with the U.S. claims and specification. The statement "could not be clearer," and addressed the same issue of patentability over the prior art. See A536; Apple, 2014 WL 1646435, at *17. The "principles illustrated in [this Court's] decisions provide ample support for holding [Teashot] to the statements made during [European] prosecution." Id.[16]

---

[16] To the extent this Court considers the district court's grammar analysis (A38), it cannot overcome the evidence favoring Defendants' construction, nor Teashot's "blatant admission." Gillette Co. v. Energizer Holdings, Inc., 405 F.3d 1367, 1374 (Fed. Cir. 2005) (holding party to "blatant admission" made to EPO).

### 2.    Defendants Undisputedly Do Not Meet the Correct Construction.

Under the correct construction, Defendants do not infringe. It is undisputed that all the accused products have significant amounts of tea with particle sizes different than "about 0.40 mm to about 0.75 mm." A76, claim 1; A77, claim 21.

Teashot's tea composition expert, Philip Coggon, conducted sieve tests to determine the size of the tea particles in the accused K-Cup® packs. A1040-1048, 1054-1055. Defendants' rebuttal expert, Bruce Klodt, reviewed Coggon's methodology and results, and agreed they were accurate. A2282-2290.[17]

Coggon's results demonstrate that **none** of the accused products have substantially all of their tea with a particle size "from about 0.40 mm to about 0.75 mm." His testing showed that the accused products have anywhere from a low of 45% to a high of 83% of their tea particles within the claimed range, with most accused products falling between 50% and 70%. A1047, 1054-1055. Having roughly one-third to one-half of the tea particles outside the claimed range means the accused products cannot meet the requirement that substantially all of the tea in the sealed body be within the range.

As with the limitation "sealed body is constructed of a water-permeable material…," Teashot did not assert DOE for the tea composition limitation in its

---

[17] The experts' disagreement was over how much deviation "about" allows. A2282-2290.

infringement contentions on May 1, 2012, nor in its "revised" contentions in

March 2013. A1100-1101, 1142-1150. Its further revision at the end of fact

discovery included a bare allegation of DOE, but failed to substantiate it. A1101,

1157-1158, 1168. Unlike the "sealed body" limitation, however, Teashot's relevant

expert (Coggon) never explained the DOE allegation, but instead argued solely for

literal infringement. A1042-1057. In the Final Pretrial Order, Teashot did not

include the tea composition limitation in its explanation of its DOE allegations.

A2353-2362. Teashot thus waived any DOE allegation, and never substantiated

one anyway. Nor could Teashot maintain DOE on this limitation, given its EPO

statements. A39 n.3. Hence Defendants do not infringe this limitation.

## CONCLUSION

For the above reasons, Defendants respectfully request this Court affirm the

grant of summary judgment of noninfringement of U.S. Patent No. 5,895,672.

Respectfully submitted,

Date: June 19, 2014

/s/ Michael A. Albert
Michael A. Albert
Gerald B. Hrycyszyn
Hunter D. Keeton
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA 02210
Tel:  (617) 646-8000
Fax: (617) 646-8646

*Attorneys for Defendants-Appellees
Green Mountain Coffee Roasters,
Inc., n/k/a Keurig Green Mountain, Inc.,
and Keurig, Incorporated.*

Date: June 19, 2014

/s/ Aaron P. Bradford
Aaron P. Bradford
Alexander C. Clayden
LATHROP & GAGE LLP
950 17th Street, Suite 2400
Denver, CO 80202
Tel:  (720) 931-3200
Fax:  (720) 931-3201

*Attorneys for Defendants-Appellees
Green Mountain Coffee Roasters,
Inc., n/k/a Keurig Green Mountain, Inc.,
Keurig, Incorporated, and
Starbucks Corporation.*

# **PROOF OF SERVICE**

I hereby certify that on June 19, 2014, I caused to be electronically filed the foregoing **Brief of Defendants-Appellees Green Mountain Coffee Roasters, Inc., Keurig, Incorporated, and Starbucks Corporation** with the Clerk of the United States Court of Appeals for the Federal Circuit via the CM/ECF system, which will send a notice of electronic filing to the following counsel of record who have registered for the CM/ECF system:

Robert R. Brunelli
*[rbrunelli@sheridanross.com]*
David B. Kellis
*[dkellis@sheridanross.com]*
Joseph E. Kovarik
*[jkovarik@sheridanross.com]*
Sheridan Ross P.C.
1560 Broadway, Suite 1200
Denver, CO  80202-5141
303-863-9700

Aaron P. Bradford
*[abradford@lathropgage.com]*
Alexander C. Clayden
*[aclayden@lathropgage.com]*
Lathrop & Gage, LLP
950 17th Street
U.S. Bank Building, #2400
Denver, CO 80202
720-931-3200

In addition, I certify that a copy of this electronic filing is being sent via electronic mail to the following counsel of record in the district court below:

Kenneth Spencer Chang
*[kschang@kilpatricktownsend.com]*
Kilpatrick Townsend & Stockton, LLP
1400 Wewatta Street, #600
Denver, CO 80202
303-571-4000

Upon acceptance by the Clerk of the Court of the electronically filed document, the required number of paper copies of the Brief of Defendants-

Appellees will be filed at the Office of the Clerk, United States Court of Appeals

for the Federal Circuit in accordance with the Federal Circuit Rules.

Date: June 19, 2014                    /s/ Michael A. Albert
                                       Michael A. Albert
                                       *[malbert@wolfgreenfield.com]*
                                       Gerald B. Hrycyszyn
                                       *[ghrycyszyn@wolfgreenfield.com]*
                                       Hunter D. Keeton
                                       *[hkeeton@wolfgreenfield.com]*
                                       WOLF, GREENFIELD & SACKS, P.C.
                                       600 Atlantic Avenue
                                       Boston, MA 02210
                                       Tel.: (617) 646-8000
                                       Fax: (617) 646-8646

                                       *Attorneys for Defendants-Appellees*
                                       *Green Mountain Coffee Roasters,*
                                       *Inc., n/k/a Keurig Green Mountain, Inc., and*
                                       *Keurig, Incorporated.*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.     This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32 (a)(7)(B).  The brief contains 13,976 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b).

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).  The brief has been prepared in a proportionally spaced typeface using Microsoft Word and 14 point Times New Roman font.

Date: June 19, 2014               /s/ Michael A. Albert
                                  Michael A. Albert
                                  *Attorneys for Defendants-Appellees*
                                  *Green Mountain Coffee Roasters,*
                                  *Inc., n/k/a Keurig Green Mountain,*
                                  *Inc., and Keurig, Incorporated.*