## IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

**TEASHOT.LLC**, a Colorado limited liability company,

*Plaintiff - Appellant,*

v.

## GREEN MOUNTAIN COFFEE ROASTERS, INC.,
a Delaware corporation, **KEURIG, INCORPORATED,**
a Delaware corporation, **STARBUCKS CORPORATION,**
a Washington corporation,

*Defendants - Appellees.*

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
IN CASE NO. 1:12-CV-00189-WJM-KMT, JUDGE WILLIAM J. MARTÍNEZ**

## REPLY BRIEF OF APPELLANT

**Robert R. Brunelli**
**Joseph E. Kovarik**
**David B. Kellis**
**Sheridan Ross P.C.**
**1560 Broadway, Suite 1200**
**Denver, Colorado 80202**
**(303) 863-9700**

*Counsel for Appellant Teashot.LLC*          *Dated:  July 7, 2014*

## <u>CERTIFICATE OF INTEREST</u>

Counsel for Plaintiff-Appellant Teashot.LLC certifies the following:

1.      The full name of every party or amicus represented by me is

Teashot.LLC.

2.      The name of the real party in interest represented by me is

Teashot.LLC.

3.      There are no parent corporations or publicly held companies that own

10 percent or more of the stock of Teashot.LLC.

4.      The names of all law firms and the partners or associates that

appeared for Teashot.LLC in the trial court and that are expected to appear in this

court are Robert R. Brunelli, Joseph E. Kovarik and David B. Kellis of Sheridan

Ross P.C.


Dated:  July 7, 2014          By:    /s/ Robert R. Brunelli
                                      Robert R. Brunelli
                                          rbrunelli@sheridanross.com
                                      Joseph E. Kovarik
                                          jkovarik@sheridanross.com
                                      David B. Kellis
                                          dkellis@sheridanross.com
                                      SHERIDAN ROSS P.C.
                                      1560 Broadway, Suite 1200
                                      Denver, CO 80202-5141
                                      (303) 863-9700

                                      ATTORNEYS FOR PLAINTIFF-
                                      APPELLANT TEASHOT.LLC

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ..............................................................i

TABLE OF CONTENTS ...................................................................ii

TABLE OF AUTHORITIES ...............................................................iv

ARGUMENT .................................................................................1

I.    DEFENDANTS' USE OF THE ACCUSED K-CUPS
DIRECTLY INFRINGES THE '672 PATENT ...............................2

II.   USE OF THE ACCUSED K-CUPS IN A KEURIG BREWER
CONSTITUTES INFRINGEMENT UNDER A PROPER
INTERPRETATION OF THE CLAIMS .......................................5

     A.    Teashot Did Not Waive Any Arguments In Its Opening Brief ...........6

     B.    The Court Erred In Granting Summary Judgment
Of No Literal Infringement .................................................6

          1.    The District Court's Original Construction of
the Sealed Body Limitation is Legally Incorrect ......................8

          2.    Even Under the District Court's Incorrect Original
Construction, Summary Judgment of No
Literal Infringement Must be Reversed ..................................12

          3.    The District Court's New Constructions
Were Result-Driven and Legally Erroneous............................14

     C.    The District Court Abused Its Discretion In
Sanctioning Teashot And Eliminating Teashot's
DOE Theory Of Infringement ............................................15

          1.    Reversal is Required Because the District Court Violated
Rule 83 and Deprived Teashot of Due Process ........................15

2.        Defendants' Scheduling Order Argument
is a Red Herring ........................................................................17

3.        Reversal of the DOE Sanction is Required Because
Defendants Did Not Object to the Pre-Trial Order...................20

D.     The Court's Ruling Cannot Be Affirmed On Any Grounds................22

1.        Defendants' DOE Infringement Vitiation
Argument is Illusory ................................................................22

2.        Factual Questions Preclude Summary
Judgment on the Sealed Body Limitation.................................24

3.        The Court's Construction of the Tea
Composition Limitation Was Correct.......................................24

III.    CONCLUSION..............................................................................................31

ADDENDUM

CERTIFICATE OF FILING AND SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Apple Inc. v. Motorola, Inc.*,
No. 2012-1548, 2014 WL 1646435 (Fed. Cir. Apr. 25, 2014) ...........................29

*Ashby v. McKenna*,
331 F.3d 1148 (10th Cir. 2003).............................................................................17

*Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp., Inc.*,
262 F.3d 1258 (Fed. Cir. 2001) ...........................................................................11

*Bicon, Inc. v. Strauman Co.*,
441 F.3d 945 (Fed. Cir. 2006) ..............................................................................13

*Caterpillar Tractor Co. v. Berco, S.p.A.*,
714 F.2d 1110 (Fed. Cir. 1983) ............................................................................29

*Cohesive Techs., Inc. v. Waters Corp.*,
543 F.3d 1351 (Fed. Cir. 2008).............................................................................27

*Commodity Futures Trading Comm'n v. Brockbank*,
316 F. App'x 707 (10th Cir. 2008).........................................................................17

*Deere & Co. v. Bush Hog, LLC*,
703 F.3d 1349 (Fed. Cir. 2012) ............................................................................13

*Fujitsu Ltd. v. Netgear Inc.*,
620 F.3d 1321 (Fed. Cir. 2010) ............................................................................14

*In re Gabapentin Patent Litig.*,
503 F.3d 1254 (Fed. Cir. 2007) ............................................................................23

*Interactive Gift Express, Inc. v. Compuserve Inc.*,
256 F.3d 1323 (Fed. Cir. 2001) ..............................................................................6

*Kruse Technology Partnership v. Volkswagen AG*,
544 F. App'x 943 (Fed. Cir. 2013)................................................................. 15, 16

*L.E.A. Dynatech, Inc. v. Allina*,
    39 F.3d 1527 (Fed. Cir. 1995) ..............................................................6

*Massachusetts Institute of Technology v. Abacus Software*,
    462 F.3d 1344 (Fed. Cir. 2006) ...........................................................16

*Novatek, Inc. v. Sollami Co.*,
    No. 2013-1389, 2014 WL 1229547 (Fed. Cir. Mar. 26, 2014)............................13

*O2 Micro International Ltd. v. Monolithic Power Systems, Inc.*,
    467 F.3d 1355 (Fed. Cir. 2006) ...........................................................17

*Pfizer, Inc. v. Ranbaxy Labs. Ltd.*,
    457 F.3d 1284 (Fed. Cir. 2006) ...........................................................28

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) ..................................................... 10, 11

*Quest Software, Inc. v. Centrify Corp.*,
    No. 2:10-cv-859, 2011 WL 3809807 (D. Utah Aug. 5, 2011) ............................16

*Speedtrack, Inc. v. Endeca Technologies, Inc.*,
    524 F. App'x 651 (Fed. Cir. 2013) .......................................................15

*Starhome GmbH v. AT&T Mobility LLC*,
    743 F.3d 849 (Fed. Cir. 2014) ............................................................29

*Thorner v. Sony Computer Entm't Am. LLC*,
    669 F.3d 1362 (Fed. Cir. 2012) ............................................... 8, 26, 27

*TI Grp. Auto. Sys. (N. Am.), Inc. v. VDO N. Am., L.L.C.*,
    375 F.3d 1126 (Fed. Cir. 2004) ................................................... 28, 29

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996) ...........................................................11

*Wilson v. Muckala*,
    303 F.3d 1207 (10th Cir. 2002) .................................................. 20, 21

*Woods v. DeAngelo Marine Exhaust, Inc.,*
  692 F.3d 1272 (Fed. Cir. 2012) .............................................................15

## **RULES**

Fed. R. Civ. P. 26 ............................................................. *passim*

Fed. R. Civ. P. 37 .............................................................*passim*

Fed. R. Civ. P. 83 .............................................................*passim*

# **ARGUMENT**

In page after page of their Opposition Brief, Defendants vigorously assert that the foil lid of the Accused K-Cups is not water-permeable, and that the internal compartment of the Accused K-Cups is not a sealed body. If these arguments were correct, then water could never enter an Accused K-Cup to produce a tea extract, and even if it did, the resulting tea extract would be full of escaped tea particles and therefore undrinkable. No consumer would buy such a product.

Defendants' arguments do not reflect reality. When the Accused K-Cups are used in the intended manner, for their intended purpose—brewed in a Keurig brewer to produce a tea extract—water passes in a straight line from one side of the foil lid to the other, thus necessarily passing through the foil lid (which, in turn, is necessarily water-permeable). Moreover, the tea composition remains completely contained within the internal compartment, thus demonstrating that the internal compartment is indeed a sealed body. Precisely because the Accused K-Cups *do* produce a drinkable tea extract when used in a Keurig brewer, Defendants sell them by the millions each and every year.

The district court's construction of the Sealed Body Limitation improperly narrowed that limitation by ignoring the plain meaning of the terms therein. Moreover, Defendants' arguments fail to account for Teashot's contention that infringement occurs during *use* of the Accused K-Cups, and would limit the scope

of the claims to cover only filter paper "pods" despite preferred embodiments being made of perforated steel (similar to the perforated foil of the K-Cups). Defendants' arguments should be rejected, and the court's grant of summary judgment reversed.

## I.    DEFENDANTS' USE OF THE ACCUSED K-CUPS DIRECTLY INFRINGES THE '672 PATENT

Teashot *does not* assert that initial production of tea-filled K-Cups directly infringes the '672 Patent. Rather, direct infringement only occurs when Defendants and their customers use the Accused K-Cups in a Keurig brewer to produce a cup of tea.[1] (JA 159-60, 1218-19.) During such use, the claimed sealed body is constructed, a cup of tea is produced, and the system and method claims of the '672 Patent are infringed.

As Defendants' technical expert explains, the Accused K-Cups are specifically designed to operate in a Keurig brewer. When a K-Cup is placed in a Keurig brewer, a hollow needle on the brewer head easily perforates the foil lid of the K-Cup. An O-ring surrounding the needle seals the K-Cup around the perforation, precluding tea particles from exiting the K-Cup during the brewing process:

---

[1] Teashot also accuses Defendants of contributing to and inducing their customers' direct infringement by making and selling the Accused K-Cups and encouraging their customers to use them as designed: in a Keurig brewer to brew tea. (JA 164, 1220-21.)

22.     I also tested a number of the accused K-Cup® packs in a Keurig brewer, both with and without the O-ring around the inlet needle.  First, I tested some of the accused flavors in the K-Cup® brewer with the O-ring in place.  ***The operation resulted in the liquid injected by the brewer passing through the pack, the outside of the top lid remained dry, and the resulting tea extract was free of visible tea particles.***  For example:


Fig. 4


Fig. 5

23.     I then removed the O-ring from the brewer, placed new accused K-Cup® packs inside the brewer, and operated it again. While the brewer operated again, water and tea particles escaped out of the top of the pack, making a big mess.  This occurred with every test I ran without the O-ring.  For example:


Fig. 6

Fig. 7

Fig. 8

Fig. 9

24. Without the O-ring, water and tea particles leaked down the side of the accused K-Cup® packs, and out into the brewer.  Tea

particles also visibly accumulated in the resultant tea extract. For example:



Fig. 10          Fig. 11

Fig. 12          Fig. 13

25.    In short, without the O-ring, both water and tea particles consistently escaped from the accused K-Cup® packs . . . .

(JA 1275-77.)

To be **very** clear, a "sealed body" that satisfies the limitations of Claims 1 and 21 of the '672 Patent is constructed when the Accused K-Cups are placed into a Keurig brewer and that brewer is operated by Defendants or their customers. When that occurs:

- A tea composition meeting the claim requirements is physically present within an internal compartment of a body constructed of water-permeable

materials (a filter paper cup, with a perforated foil lid). (JA 1407-12, 1050-57.)

- The internal compartment, aided by the O-ring, creates a "sealed" body that precludes tea particles from escaping while tea extract is being produced. (JA 100, 1412-13.)

- Water flows into the sealed body through the water-permeable lid, then through the sealed body and the tea composition contained therein before exiting, as a tea extract, through the water-permeable filter paper. (JA 106, 1287.)

The Sealed Body Limitation of Claims 1 and 21 is thus literally met, and those claims are literally infringed, by use of the Accused K-Cups in a Keurig brewer.

## II. USE OF THE ACCUSED K-CUPS IN A KEURIG BREWER CONSTITUTES INFRINGEMENT UNDER A <u>PROPER INTERPRETATION OF THE CLAIMS</u>

Contrary to Defendants' positions, Teashot did not waive any claim construction or other arguments presented in its opening brief, and the district court both improperly construed the Sealed Body Limitation and improperly imposed a Rule 37 sanction in violation of Rule 83. This Court, therefore, should not hesitate to properly construe the disputed Sealed Body Limitation, reverse the grant of summary judgment, and remand for further proceedings.

### A.    Teashot Did Not Waive Any Arguments In Its Opening Brief

Advocating for its original proposed claim construction, Teashot, in its opening brief, discusses a reference to "the present invention" in the specification and also addresses the incorporated-by-reference Fond patent.  Br. of Appellant, D.I. 31 ("Br.") at 6-7, 28-32.  Contrary to Defendants' position, these arguments, which "are based on a specification in evidence" and "are in support of an existing claim construction, are not barred by the doctrine of waiver for the sole reason that they were [allegedly] not first presented to the trial court." *Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1347 (Fed. Cir. 2001).  Likewise, because Teashot had no opportunity before the district court to argue that its revised infringement contentions were substantially justified by Defendants' deposition testimony for purposes of Rule 37, Teashot did not waive that argument, either.  *Interactive*, 256 F.3d at 1344-45 (citing *L.E.A. Dynatech, Inc. v. Allina*, 39 F.3d 1527, 1531 (Fed. Cir. 1995)).  Defendants' latest waiver arguments therefore fail.

### B.    The Court Erred In Granting Summary Judgment Of No Literal Infringement

In granting summary judgment, the lower court improperly narrowed the scope of the Sealed Body Limitation to require that fluid must flow through water-permeable material ***both*** when entering and when exiting the sealed body.  The court reached this conclusion by ignoring the full scope of key words in the Sealed

Body Limitation and by wrongly limiting those words to a preferred embodiment. Properly construed, the Sealed Body Limitation is met by a sealed compartment that includes water-permeable material which permits fluid to flow from inside to outside of the sealed body, regardless of how the fluid entered into the sealed body.

However, even if the lower court's original construction were correct (which it is not), the Accused K-Cups literally infringe, as explained above, when used in a Keurig brewer. During use, fluid flows in a straight line from one side of the foil lid to the other. (JA 1286-88.) A material through which fluid flows is necessarily water-permeable, meaning fluid flows both into and out of the sealed body of the Accused K-Cups through water-permeable material.

Importantly, though, the district court did not grant summary judgment based upon its original construction of the Sealed Body Limitation. Instead, the district court changed its original construction to require that the claimed sealed body also be "constructed in the *first instance* of," and that fluid flow "directly through," water-permeable material. (*See* JA 52 & n.3.) The court then held that because lids of the Accused K-Cups are produced in the "*first instance*" without a perforation, they cannot be water-permeable material, and because fluid enters the Accused K-Cups through a needle, it does not pass "*directly*" through water-permeable material. (JA 52-53.) The court's new constructions lack justification by any intrinsic or extrinsic evidence of record, aptly demonstrate that summary

7

judgment was not appropriate under the court's original constructions, and require reversal of summary judgment.

### 1. The District Court's Original Construction of the Sealed Body Limitation Is Legally Incorrect

The court below originally construed the claims to require that fluid flow both into and out of water-permeable material for the Sealed Body Limitation to be met. (JA 26-31.) The court's stated basis for this conclusion—"[t]he [c]laim requires that the *water-permeable material* allow flow of a fluid *through* the *sealed body*," (JA 28)—rests on one or both of the following unstated assumptions:

- Fluid can **only** flow through a sealed body by both entering and exiting that body via water-permeable material; or

- Water-permeable material can **only** allow fluid to flow if the fluid passes both into and out of that material.

Neither proposition is factually accurate or supported by the plain and ordinary meaning of "through" or "allow."

Defendants do not dispute that the ***ordinary*** meaning of "through" includes "by way of" or "from end to end," as well as "into and out of." Br. of Appellees, D.I. 35 ("Opp'n Br."), p.17; (*see also* JA 738-39, 764, 768.) It should also be undisputed that "which allows" plainly means nothing more than "which permits." Teashot is entitled to the full scope of those plain and ordinary definitions. *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1367 (Fed. Cir. 2012).

Thus, the claims textually require only that fluid enter a sealed body at least partially constructed of water-permeable material, but for which the fluid would not be allowed to flow through the sealed body.[2] That is exactly how the Accused K-Cups function when used in a Keurig brewer.

Had Mr. Cooper wanted to restrict the claims so that portions of the sealed body "into" which fluid flows must have been constructed of a water-permeable material, he could have used those words in the claims. But he did not. Instead, he claimed an invention "which allows" fluid to flow through a sealed body. Even *if* "through" is construed to mean *only* "into and out of," a person skilled in the art would recognize that water-permeable material through which fluid exits a sealed body allows fluid to flow "into and out of" the sealed body. That is, but for the presence of that water-permeable material, fluid could flow into (perhaps), but not out of, the sealed body, which would not qualify as flow *through* ("into and out of") the sealed body. The notion that fluid must travel through water-permeable material to enter into the sealed body lacks any textual, grammatical, or functional support.

The specification also provides no support for the district court's requirement that fluid must enter the sealed body through water-permeable material. Br. at 29-

---

[2] The claim certainly does *not*, as Defendants suggest, "*expressly* require that the water-permeable material *provide passage* of the fluid through the sealed body." Opp'n Br. at 16 (emphasis added).

31.  As Teashot argued below and to this Court, Defendants' "present invention" argument does not evidence a disavowal of claim scope allowing the normal and ordinary meaning of "which allows" to be jettisoned.  Br. at 26-31; (JA 742; *see also* JA 736-43.)

Just as importantly, the '672 Patent ***does disclose*** an embodiment where the complete sealed body is only constructed upon use.  That embodiment is shown as the top basket of Fig. 4 of the '672 Patent.  The specification literally discloses that each of the baskets, including the top basket, is a "sealed body," (JA 71, 7:66-8:13[3]), and a person skilled in the art would understand that the top basket is sealed when enclosed within the brewing chamber of the coffee brewing device.  (JA 73-74, 12:5-13:28.)  Then, fluid enters the now-sealed top basket directly, i.e., without passing through anything but air.  (*Id.*)  Defendants' suggestion that Teashot's proposed construction is not supported by the intrinsic evidence of record is simply wrong.

Defendants next purport to rely on the "prosecution history" of the '672 Patent.  The '672 Patent received a first office action notice of allowance, (JA 475, 615) such that there was no "ongoing negotiation between the PTO and the applicant" over the scope of the '672 Patent's claims.  *Phillips v. AWH Corp.*, 415

---

[3] Although Defendants quote this passage in their brief, they ignore it when claiming that "[t]here is no indication that the containers are 'sealed'. . . ."  Opp'n Br. at 24-25.

F.3d 1303, 1317 (Fed. Cir. 2005). Nor were there any communications to the USPTO from Mr. Cooper "demonstrating how the inventor understood the invention" or "making the claim scope narrower than it would otherwise be." *Id.* (citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582-83 (Fed. Cir. 1996)). As a result, there is no relevant prosecution history to consider in rendering a legal conclusion on claim construction.

Even if considered, though, the cited Notice of Allowability does not support the district court's construction. In the Notice, the Examiner simply described what U.S. Patent No. 5,776,527 ("Blanc") teaches. (JA 477-78.) That description neither claims that Blanc "meets the 'sealed body' limitation" of the '672 Patent's claims, Opp'n Br. at 21, nor provides any "evidence of how the PTO and the inventor understood" the claims of the '672 Patent, *Phillips*, 415 F.3d at 1317. In short, the cited evidence does not include any "express representations made in obtaining the patent regarding the scope and meaning of the claims." *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp., Inc.*, 262 F.3d 1258, 1268 (Fed. Cir. 2001). Thus, the notice does not inform how the claims of the '672 Patent should be interpreted.

In sum, the Sealed Body Limitation, properly construed, does not dictate how fluid enters the sealed body.

### 2. Even Under the District Court's Incorrect Original Construction, Summary Judgment of No Literal Infringement Must Be Reversed

The foil lid of a K-Cup is undisputedly perforated by a needle when used in a brewer.  (JA 1287.)  Fluid thus enters into and exits the sealed body of the Accused K-Cups through water-permeable material (i.e., the perforated foil lid and the filter paper inner cup, respectively).  (JA 1409-12; JA 571-72.)  Even if this conclusion is not required as a matter of law, there is a disputed material issue of fact as to whether the perforated foil lid constitutes water-permeable material that precludes grant of summary judgment of no literal infringement.  (*See* JA 1220-21.)

Defendants attempt to avoid this result by noting that the sealed body must be "***constructed*** of a water-permeable material," and asserting that the accused products' lids are constructed of impermeable foil.[4]  Opp'n Br. at 34.  Accused K-Cups are ***initially*** fitted with an impermeable foil lid—just like the containers in the incorporated-by-reference device of Fond.  (*See* JA 572, 3:15-29, 3:66-4:10.)  Every time Defendants and their customers use the Accused K-Cups in a Keurig brewer (their sole purpose), however, the foil lid is perforated, the resulting hole is sealed with the O-ring and needle, and the claimed sealed body is constructed.  (JA

---

[4] Defendants should not now be permitted to argue non-infringement based on the words "constructed of," given that their proposed construction, adopted by the court, does not include those words.

1220-21, 1224, 1412-14.)  Just as the perforated membrane of Fond is water-permeable—a fact that Defendants admit, Opp'n Br. at 28—so too is the perforated foil lid of the Accused K-Cups water-permeable.

Seeking to avoid the natural consequences of these "construction" actions, Defendants argue that *Bicon, Inc. v. Strauman Co.*, 441 F.3d 945 (Fed. Cir. 2006), *Deere & Co. v. Bush Hog, LLC,* 703 F.3d 1349 (Fed. Cir. 2012), and *Novatek, Inc. v. Sollami Co.*, No. 2013-1389, 2014 WL 1229547 (Fed. Cir. Mar. 26, 2014), preclude Teashot's infringement position, and that "everything" can somehow be pierced and become water-permeable.  Opp'n Br. at 34-37.  Those cases, however, require that "reasonableness" be exercised in assessing infringement, and are thus easily distinguishable.  Here, it is eminently reasonable to conclude that because the Accused K-Cup lids are made of easily pierceable foil specifically designed to be perforated (indeed, a K-Cup cannot be used ***unless*** its lid is perforated), the ***perforated*** foil lids are a water-permeable material.  Indeed, Teashot does not argue that any material that can be made water-permeable in the future is therefore water-permeable now.  Teashot simply argues that materials through which water actually passes—including the perforated foil lids of the Accused K-Cups—***are*** water-permeable.

### 3. The District Court's New Constructions Were Result-Driven and Legally Erroneous

Defendants argue that the district court did not amend its claim construction when it narrowed the meaning of "constructed" to "constructed in the first instance" and "through" to "directly through" in granting summary judgment. Opp'n Br. at 37-39. Instead, Defendants assert that the district court merely explained how its prior interpretation applies to the accused methods. But the court's construction of the Sealed Body Limitation—originally proposed by Defendants—replaced "constructed of" with "are." (JA 26, 31.) There can be no dispute, then, that the court engaged in further claim construction when it evaluated infringement using "constructed in the first instance" rather than "are." Moreover, in *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321 (Fed. Cir. 2010), cited by Defendants, the relevant claim expressly required a "fixed" time period as an "additional[] element of the claim" beyond that construed by the court. *Id.* at 1336-37. In granting summary judgment, the court reasonably concluded that "fixed" was an easily understood term, that it did not need definition, and that a "fixed" time period was not present in the defendants' products, making summary judgment appropriate. *Id.* Here, neither "in the first instance" nor "directly" are included in the claims (or anywhere in the '672 Patent) and the court obviously used those words to narrow "constructed" and "through" to improperly grant summary judgment. (*See* JA 52-53.)

### C.    The District Court Abused Its Discretion In Sanctioning Teashot And Eliminating Teashot's DOE Theory Of Infringement

Defendants contend that the district court did not violate Rule 83 when it imposed a Rule 37 sanction of waiver.  Defendants then suggest that even if the district court did violate Rule 83, Teashot still deserves the sanction for allegedly violating the Scheduling Order.  Defendants are wrong on both counts.  Further, Defendants' failure to object to the inclusion of Teashot's DOE infringement position in the Final Pretrial Order independently justifies reversal.

### 1.    Reversal is Required Because the District Court Violated Rule 83 and Deprived Teashot of Due Process

Rule 83 required the district court to furnish Teashot with "actual notice" that it considered Teashot's infringement contentions to be subject to Rule 26(e) before it could impose a Rule 37 sanction for allegedly violating Rule 26(e).  No such notice was given.  Indeed, Defendants admit as much, Opp'n Br. at 43, and have identified no implicit statement in the Scheduling Order or elsewhere that provided Teashot with the required notice.  *Id.* at 43-45.

Further, none of Defendants' cited cases support the court's sanction of waiver.  *Woods v. DeAngelo Marine Exhaust, Inc.* focuses on contention interrogatories, none of which were served here.  *See* 692 F.3d 1272, 1278-83 (Fed. Cir. 2012).  Both *Speedtrack, Inc. v. Endeca Technologies, Inc.*, 524 F. App'x 651 (Fed. Cir. 2013), and *Kruse Technology Partnership v. Volkswagen AG*, 544 F.

15

App'x 943 (Fed. Cir. 2013), are local rules cases, and it is beyond dispute that no local rules are here applicable. *See Quest Software, Inc. v. Centrify Corp.*, No. 2:10-cv-859, 2011 WL 3809807, at *1 (D. Utah Aug. 5, 2011) (refusing to follow cases applying local patent rules where no such rules have been adopted). In fact, the court below only recently initiated a pilot program with local patent rules (attached as Addendum E, per Fed. R. App. P. 28(f)), to take effect in August 2014. Add. 63, 71. These new rules explicitly prescribe the contents of ***initial*** infringement contentions and provide a deadline for ***final*** infringement contentions. Add. 64-65, 69-70. No such rules existed at any time relevant to this matter, and neither were any similar requirements set forth in the Scheduling Order. If such requirements were simply understood, as the district court seemed to suggest, (JA 58), they would not have been spelled out in the newly adopted local patent rules. The recently adopted rules thus further evidence the court's violation of Rule 83 and Teashot's due process rights. Accordingly, here as in *Massachusetts Institute of Technology v. Abacus Software*—another case in which the district court improperly imposed a sanction of waiver for a party's failure to comply with a requirement issued *sua sponte* and applied without actual notice— the proper remedy is to lift the imposed sanction. 462 F.3d 1344, 1359-60 (Fed. Cir. 2006).

## 2. Defendants' Scheduling Order Argument is a Red Herring

Defendants contend that the Court need not reach Teashot's Rule 83 argument because it can affirm the sanction based on Teashot's alleged violation of the Scheduling Order. But the court neither found a violation of the Scheduling Order nor exercised its discretion under Rule 16(f) to impose sanctions for such a violation. (JA 53-61.) To prevail on their argument, then, Defendants must establish that the court's non-imposition of sanctions under Rule 16(f) was itself an abuse of discretion. *Ashby v. McKenna*, 331 F.3d 1148, 1151 (10th Cir. 2003) ("[W]ith respect to a matter committed to the district court's discretion, we cannot invoke an alternative basis to affirm unless we can say as a matter of law that 'it would have been an abuse of discretion for the trial court to rule otherwise.'" (citation omitted)). Defendants have failed to recognize, let alone to meet, this burden.

Nor could they, as Teashot fully complied with the Scheduling Order. That order required Teashot to serve infringement contentions on May 1, 2012. (JA 351.) As Defendants admit, Teashot served infringement contentions on that date. Opp'n Br. at 40. Contrary to Defendants' arguments, then, Teashot did comply with the Scheduling Order.[5]

---

[5] Consequently, neither *O2 Micro International Ltd. v. Monolithic Power Systems, Inc.*, 467 F.3d 1355 (Fed. Cir. 2006), nor *Commodity Futures Trading Comm'n v. Brockbank*, 316 F. App'x 707 (10th Cir. 2008), both of which deal with a failure to

Even so, Defendants desperately argue, over more than four pages of their brief, that Teashot violated the Scheduling Order for initial lack of content or impermissible supplement.  Opp'n Br. at 39-43; *id.* at 43-45.  But the Scheduling Order is utterly silent about any required contents of the infringement contentions, and contains no supplementation prohibition.  (*See* JA 343-54.)  Moreover, the Scheduling Order required Teashot to serve infringement contentions before Teashot obtained any discovery from Defendants and at the very beginning of the claim construction process.  Defendants' suggestion that such early contentions could never be modified, but rather needed to include Teashot's final, detailed infringement positions, *see* Opp'n Br. at 40, 45, is wholly unsupported by the stated purpose of the Scheduling Order and defies logic.

Remarkably, Defendants completely ignore their own conduct in accusing Teashot of violating the Scheduling Order.[6]  Defendants, like Teashot, labeled their first set of contentions as "preliminary."  (JA 674.)  While Teashot served final "Infringement Contentions" on the last day of fact discovery, Defendants served "Supplemental Preliminary Invalidity Contentions" on that day, at which time they newly identified "additional prior art references" supporting a new theory of

---

meet scheduling order deadlines, has any relevance here.

[6] Defendants also ignore the facts.  They accuse Teashot of "failing to even attempt to [supplement its infringement contentions] during fact discovery," Opp'n Br. at 45, when the record clearly shows that Teashot (like Defendants) supplemented its contentions before fact discovery closed.  (JA 1007, 1253.)

invalidity (anticipation).  (JA 1253, 2019-23.)  Defendants included these additional prior art references and their anticipation theory in their opening expert report on invalidity.  (JA 1555-57.)  Then, *after* the close of fact discovery and *after* opening and rebuttal expert reports were due, Defendants served a supplemental expert report in which they identified still another new prior art reference and made new invalidity arguments.  (JA 1524-27.)  When Teashot moved under Rule 37 to strike that supplemental report for violating Rule 26(e), Defendants argued, and the court agreed, that there was no prejudice to Teashot because expert depositions had not yet been taken.  (JA 2113-17, 2428-30.)

The absurd result of the court's rulings is that while Defendants permissibly supplemented their invalidity contentions with new theories and references on the last day of fact discovery, and then were allowed *by the court* to rely upon a new prior art reference not disclosed until after rebuttal expert reports were served, Teashot was deemed to have waived an infringement theory that was identified in the pre-*Markman* Scheduling Order (filed on April 17, 2012), disclosed in final infringement contentions served on the same day as Defendants' Supplemental Preliminary Invalidity Contentions, and detailed in a timely opening expert report.

Defendants' conduct shows what all parties understood:  that the infringement and invalidity contentions required by the Scheduling Order were preliminary and could be supplemented until the close of fact discovery.

Moreover, the court's denial of Teashot's motion to strike Defendants' supplemental expert report cannot be reconciled with the court's subsequent sanctioning of Teashot. If Defendants' supplemental expert report, with its never-before-identified prior art reference, worked no prejudice on Teashot (as the district court found), then Teashot's doctrine of equivalents argument, which was properly disclosed during both fact and expert discovery, worked no prejudice on Defendants.[7] On these facts, the district court's fundamentally unfair sanction of waiver was an abuse of discretion, and must be reversed.

### 3. Reversal of the DOE Sanction is Required Because Defendants Did Not Object to the Pre-Trial Order

As Defendants admit, "the final pretrial order supersedes the pleadings and controls the issues for trial." Opp'n Br. at 46; (JA 2491); *Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002). Teashot's DOE infringement theory is fully included in the Final Pretrial Order, to which Defendants did not object. Those events, as a matter of Tenth Circuit law and by order of the district court, effectively "amend[ed] any previous pleadings[, including the Complaint,] which did not include that claim." *Wilson*, 303 F.3d at 1215; (JA 2491 ("The pleadings will be deemed merged herein. This Final Pretrial Order supersedes the

---

[7] The court's suggestion that it would have sanctioned Defendants for their last-day-of-fact-discovery supplemental invalidity contentions if Teashot had so moved (JA 58, n.6), is belied by the court's refusal to strike the supplemental expert report (served two months *after* the fact discovery deadline) disclosing, for the very first time, a new prior art reference.

Scheduling Order.").)  The Pretrial Order, then, eliminated any basis for Defendants to argue, and for the court to find, waiver of Teashot's DOE theory, which must be deemed included in the Complaint—a document filed long prior to entry of the Scheduling Order.

Defendants protest that they did object to the inclusion of Teashot's DOE argument in the Pretrial Order.  But the record proves otherwise.  Defendants admittedly mentioned their waiver defense in the Pretrial Order (and in the summary judgment motion incorporated by reference therein), thus making waiver an issue for trial.  But stating a claim of waiver is different than "meticulously examin[ing] the order, taking exception, if necessary, to the additions, and *recording their objection in the pretrial order*."  *Wilson*, 303 F.3d at 1216 (emphasis added).  In fact, Defendants did not record a single objection in the Pretrial Order.  (JA 2434-91; *see* JA 2431-33 (identifying only one objection, made by Teashot, as an open issue in the Pretrial Order).)

Grasping for straws, Defendants assert in their brief that "Defendants *objected* to Teashot's restatement of its entire case in the Order as 'inappropriate,' including the portion on DOE."  Opp'n Br. at 46 (emphasis added).  But Defendants actually stated:  "Defendants therefore believe that Teashot's 35-page statement above, which is more in the form of an extended trial brief, is both inappropriate and not helpful to the Court."  (JA 2470.)  This self-serving

expression of "belief" hardly constitutes an objection.  Even if it does, though, it is a general objection as to length, not as to any specific substance.  Defendants' failure to object to the inclusion of Teashot's DOE arguments in the pretrial order is fatal to their waiver argument.

### D.    The Court's Ruling Cannot Be Affirmed On Any Grounds

Defendants' three proposed alternative grounds for affirming the district court's erroneous grant of summary judgment, Opp'n Br. at 46-63, have no merit.

### 1.    Defendants' DOE Infringement Vitiation Argument is Illusory

Teashot accuses the *use* of the Accused K-Cups of infringing the '672 Patent, not the initial manufacture thereof.  *During use*, the foil lid of the K-Cups is perforated, for the express purpose of allowing water to flow into the Accused K-Cup.[8]  (JA 1220-21, 1287, 1347.)  The proper DOE analysis, then, is not whether the foil lid, *as initially manufactured*, is equivalent to a water-permeable material, but whether the *perforated* foil lid is equivalent to a water-permeable material.  Such a comparison does not risk vitiation, as a material through which water passes (i.e. a perforated foil lid) is not the antithesis of a material through which water passes (i.e. a water-permeable material).

---

[8] Once perforated, the function of the foil lid is no longer to "protect[] the tea composition inside from spoilage, due to oxidation or moisture."  Opp'n Br. at 49.

None of the other seemingly random arguments sprinkled throughout Defendants' vitiation discussion establishes that the court's grant of summary judgment was proper. In particular, Defendants' cursory analysis of the function-way-result test ignores hotly disputed facts, subject to competing expert analyses, (*compare* JA 1414-1427 *with* JA 1299-1306), that cannot be resolved on summary judgment. *In re Gabapentin Patent Litig.*, 503 F.3d 1254, 1259-62 (Fed. Cir. 2007).

Next, Mr. Cooper's explanation that any material through which water can pass is water-permeable does not render the Sealed Body Limitation meaningless. To the contrary, the Limitation still excludes materials through which water cannot pass, including any table or solid steel sheet in which a hole has not been drilled. Likewise, if Defendants were to devise a K-Cup constructed, at all relevant times, solely of material through which water cannot pass, then the use of that K-Cup in a Keurig brewer would not infringe. However, such a device is not here at issue: Defendants manufacture and sell the Accused K-Cups for exclusive use in the Keurig brewer, and those Accused K-Cups cannot be used for their sole intended purpose unless and until the foil lid thereof is perforated, allowing water to pass therethrough. Reasonable juries could easily find that the Accused K-Cups infringe the asserted claims during use, meaning Defendants' first proposed alternative ground for affirmance fails.

## 2. Factual Questions Preclude Summary Judgment on the Sealed Body Limitation

Defendants next argue that the Accused K-Cups, once punctured, are not sealed and thus do not meet the Sealed Body Limitation. Here again, hotly disputed factual issues abound. (*Compare* JA 1412-13 *with* JA 1296-99.) Further, Defendants have once again ignored the fact that Teashot's infringement allegations are limited to the time of **use** of the Accused K-Cups. **During use**, the K-Cups are never inverted (as they were to obtain the pictures in Defendants' brief), and absent some sort of modification (such as changing the relative pressure of the K-Cup, or removing the O-ring from the Keurig brewer), tea particles do not escape from the K-Cup, which is sealed.[9] Defendants' function-way-result analysis of the Sealed Body Limitation also rests on disputed facts. (*Compare* JA 1419-24 *with* JA 1304-06.) Thus, Defendants' second proposed alternative ground for affirmance, like the first, also fails.

## 3. The Court's Construction of the Tea Composition Limitation Was Correct

In a final, last-ditch effort to avoid reversal, Defendants contend that the district court erred in construing the Tea Composition Limitation, which recites:

---

[9] Defendants posit that under certain conditions, tea particles can escape the K-Cup through the needle of the Keurig Brewer. But they have previously admitted that those conditions represent an unintended malfunction, not normal operating conditions. (JA 1412.) Similarly, a missing O-ring would clearly be a malfunction.

"(b) a tea composition comprising from about 2 grams to about 10 grams of tea having a particle size of from about 0.40 mm to about 0.75 mm."  (JA 76, 18:29-31.)  The court construed the Tea Composition Limitation to require "a tea composition including at least from about 2 grams to about 10 grams of tea that has a particle size of from about 0.40 mm to about 0.75 mm."  (JA 41.)  In so doing, the court rejected Defendants' proposed construction, which would have allowed the sealed body to contain no tea particles other than those within the stated particle size range:  "said tea composition comprising from about 2 grams to about 10 grams of tea, *in which substantially all of the tea in the sealed body has* a particle size of from about 0.50 mm to about 0.75 mm."  (JA 35-41.)  As the district court found, that construction "would read into the [c]laim a limitation that is not supported by the [c]laim's language."  (JA 38).  Defendants' proposed construction was properly rejected below, and should again be rejected by this Court.

Even before addressing Defendants' arguments, the construction proposed by Defendants below (which is presumably the construction for which Defendants now advocate), suffers from a fatal facial defect.  As evident above, Defendants propose replacing the term "having" in the Tea Composition Limitation with the words "in which substantially all of the tea in the sealed body has."  (JA 35.)  They further proposed setting off that entirely new phrase with a comma, even though no

comma precedes the word "having" in the actual claim language.  (*Id.*)  This Court has no mandate to redraft claims and should reject Defendants' invitation to do so here.  *Thorner*, 669 F.3d at 1367-68.

As basic grammar principles dictate, the absence of a comma before "having" in the claim indicates that "having" modifies "from about 2 grams to about 10 grams of tea," rather than any earlier-appearing term.  (JA 38, 744-45.) Perhaps even more importantly, Defendants attempt to rewrite the Tea Composition Limitation so that the recited particle size applies not just to the "from about 2 grams to about 10 grams of tea," and not just to the "tea composition," but to the entire "sealed body."  (JA 621.)  That departure from the actual claim language would improperly strip the open-ended term "comprising" of any meaning not just once, but twice:  in the Tea Composition Limitation itself ("a tea composition *comprising* from about 2 grams to about 10 grams of tea having a particle size of from about 0.40 mm to about 0.75 mm") and in the claim preamble ("A tea extract system for production of a serving of tea extract in a coffee brewing device, *comprising*: . . . (b) a tea composition . . . .").  (JA 76 (emphasis added).) Thus, only by drastically and artificially expanding the scope of the Tea Composition Limitation to cover the entire sealed body can Defendants achieve their purpose of creating, out of whole cloth, a new limitation supporting a new non-infringement argument.  But because the purpose of claim construction is to

interpret the claims, rather than draft them anew, *Thorner*, 669 F.3d at 1365, 1367-68, Defendants' proposed construction necessarily fails.

In support of their position, Defendants first assert that "having" is a closed term requiring that "substantially all of the items in a category have the feature that comes after the word 'having.'" Opp'n Br. at 55. But there is simply no credible argument that "having" modifies "sealed body" (as it must for Defendants' proposed construction to make any sense), and the district court already found that "having" modifies "from about 2 grams to about 10 grams of tea." (JA 38.) Defendants admit as much. Opp'n Br. at 7. Further, as noted above, Defendants' proposed construction would twice improperly strip the term "comprising" of any meaning. *See Cohesive Techs., Inc. v. Waters Corp.*, 543 F.3d 1351, 1368 (Fed. Cir. 2008) ("[C]laims are interpreted with an eye toward giving effect to all terms in the claim." (citation omitted)); (JA 621-22, 744-46.) In short, the claim language does not support Defendants' position.

Second, Defendants contend that references to "the present invention" in one paragraph of the specification support their interpretation. Opp'n Br. at 56. But the cited passage never uses the word "having" (the term that Defendants' proposed construction seeks to replace) and never recites any particle sizes. Rather, the passage generally discusses the importance of tea particle size to the invention—an idea already reflected in the court's construction of the Tea Composition

Limitation.  Further, Defendants themselves admit that the specification describes multiple embodiments where tea particles outside the claimed particle size range are present.  Opp'n Br. at 57.  Explaining away these embodiments as not claimed, Defendants ignore the better explanation, and the only explanation that is consistent with the inventor's use of the open-ended term "comprising":  that the claim, properly interpreted, covers these disclosed tea composition embodiments, and that the court's construction is correct.  Nothing in the specification requires or even supports Defendants' construction.

Third, Defendants assert that the Court should consider a foreign patent attorney's statement—made to the European Patent Office ("EPO"), seven years after the '672 Patent issued, regarding a European counterpart to the '672 Patent, (JA 748-49)—to change the clear language of the claims.  Defendants are wrong. The claims at issue in the European counterpart patent were method claims that do not appear verbatim in the '672 Patent.  (JA 748; *compare* JA 76-78 *with* JA 502-03, claim 1.)  Defendants submitted no evidence below as to the effect or non-effect of these differences in claim language, nor any evidence as to the similarities or differences between U.S. and European patent practice as they specifically relate to interpretation of the language at issue.  Consequently, the foreign statement cannot even here be properly considered.  *Pfizer, Inc. v. Ranbaxy Labs. Ltd.*, 457 F.3d 1284, 1290 (Fed. Cir. 2006); *see TI Grp. Auto. Sys. (N. Am.), Inc. v. VDO N.*

*Am., L.L.C.*, 375 F.3d 1126, 1136 (Fed. Cir. 2004) (citing *Caterpillar Tractor Co. v. Berco, S.p.A.*, 714 F.2d 1110, 1116 (Fed. Cir. 1983)).  But even if considered, the statement at issue does not "serve as a basis for reading a limitation into" the '672 Patent claims.  *Caterpillar*, 714 F.2d at 1116.  Neither the recent *Starhome* nor *Apple* decision cited by Defendants changes this basic rule of *Caterpillar*.

Unlike *Starhome GmbH v. AT&T Mobility LLC*, where the Court noted that a foreign-made statement "provide[d] yet another indication that the patentees did ***not*** intend to depart from the ordinary meaning" of the term at issue, 743 F.3d 849, 858 (Fed. Cir. 2014) (emphasis added), here Defendants would have the Court rely on a foreign statement to ***depart from*** the ordinary meaning of the relevant limitation.  Given the complete lack of support in the claims and in the specification for Defendants' proposed construction, the foreign statement is not "yet another" source of support therefor, but rather the ***only*** source.  *Id.*  As such, it cannot outweigh the plain claim language.  (JA 39, n.3.)

*Apple Inc. v. Motorola, Inc.*, No. 2012-1548, 2014 WL 1646435 (Fed. Cir. Apr. 25, 2014), is likewise distinguishable.  There, the U.S. and foreign claims were identical, the patentee made multiple statements during the foreign prosecution, and the statements were consistent with the claims and the specification of the U.S. patent.  *Id.* at *17.  The same is not true here, where Defendants seize upon a single statement to the EPO, regarding non-identical

claims, and use it in an attempt to controvert the plain meaning of, and indeed to rewrite, the claims at issue.

Defendants also blatantly misrepresent the outcome of the European opposition proceeding. Far from allowing the claims "only because" of the cited statement, Opp'n Br. at 58, the EPO never once cited that statement and in fact did not understand the claims to be limited in the manner suggested by Defendants.[10] (JA 749-50; *see* JA 244-45 (distinguishing tea bags not because they contained tea particles outside the claimed particle size range, but because they did not have the minimum weight of tea particles within the claimed size range).) Likewise, Mr. Cooper's declarations to the EPO never state that all of the tea particles must be within the claimed particle size range, but instead provide the evidence relied upon by the EPO to establish that the cited tea bags did not include even the minimum 2 grams of tea within the particle size range. (JA 244-45, 544-65.)

In sum, to adopt Defendants' proposed construction, this Court would have to ignore the plain meaning of the claim language, strip key claim terms of their well-established meaning, credit extrinsic evidence of questionable relevance, ignore key aspects of that evidence, and rewrite the asserted claims to include a

---

[10] Defendants also falsely assert that "Teashot itself acknowledge[d]" that the European claims were allowed "only because the [EPO] accepted Teashot's argument." Opp'n Br. at 58. The portion of the Complaint that Defendants cite, (JA 153-56), simply quotes the EPO's decision, and Teashot explained to the court below that the EPO *did not* understand the European claims to be limited in the manner suggested by Defendants. (JA 749-50.)

limitation that is based on nothing more than Defendants' quest for a non-infringement argument.  This the Court cannot do.

## III.   CONCLUSION

Teashot respectfully urges this Court to conduct a *de novo* review of the district court's claim constructions, properly construe the Sealed Body Limitation, set aside the Rule 37 sanction, reverse the grant of summary and final judgment, and remand this case for further appropriate proceedings and trial.

Dated:  July 7, 2014

By: /s/ Robert R. Brunelli
Robert R. Brunelli
   rbrunelli@sheridanross.com
Joseph E. Kovarik
   jkovarik@sheridanross.com
David B. Kellis
   dkellis@sheridanross.com
SHERIDAN ROSS P.C.
1560 Broadway, Suite 1200
Denver, CO 80202-5141
(303) 863-9700 (Telephone)
(303) 863-0223 (Facsimile)

ATTORNEYS FOR PLAINTIFF-APPELLANT TEASHOT.LLC

# ADDENDUM

**Addendum E**

Local Rules of Practice of the United ...........................................................Add. 63
States for the District of Colorado - Patent Rules

# Pilot Program Implementing Proposed Local Patent Rules

The United States District Court for the District of Colorado announces formal adoption of a Pilot Program Implementing Proposed Local Patent Rules. The Pilot Program is designed to facilitate the efficient management of patent cases through the use of local rules collaboratively developed with members of the local patent bar and with input from public comment. Patent cases will follow the procedures and deadlines set forth in the Pilot Project Local Patent Rules beginning August 1, 2014.

The details of the Pilot Program are attached and can also be found at the U.S. District Court's website HERE, or can be obtained at the office of the Clerk of the Court at the Alfred A. Arraj U.S. Courthouse Annex located at 901 19th Street, Denver, Colorado 80294.

# PROPOSED LOCAL PATENT RULES

**D.C.COLO.LPtR 1**
**SCOPE OF THE LOCAL RULES**

**(a)** **Title and Citation.** Under the pilot program, these rules shall be known as the Local Rules of Practice of the United States District Court for the District of Colorado - Patent Rules. These rules shall be cited as D.C.COLO.LPtR Rule, Section, and Subsection (e.g., D.C.COLO.LPtR 3(a)).

**(b)** **Effective Date.** The pilot program shall become effective on approval by the Court and shall apply to all relevant actions filed on or after August 1, 2014.

**(c)** **Scope and Applicability.** These rules apply to patent infringement, invalidity and unenforceability actions. A judicial officer may modify the obligations or deadlines set forth in these rules based on the circumstances of any particular case, including, without limitation, the nature of relief sought and/or the simplicity or complexity of the case as shown by the patents, claims, technology, products, or parties involved.

**(d)** **Applicability of Local Civil Rules.** Except where inconsistent with these rules, the Local Rules of Practice of the United States District Court for the District of Colorado – Civil apply.

**(e)** **Forms.** Forms are subject to modification without notice.

1

Adopted June 4, 2014
Effective August 1, 2014

**D.C.COLO.LPtR 2**
**INITIAL SCHEDULING CONFERENCE**

Lead counsel for the parties shall participate in the conference under Fed. R. Civ. P. 26(f). The parties shall prepare and submit a proposed Patent Scheduling Order in the form [(HERE)](HERE).

**D.C.COLO.LPtR 3**
**DISCOVERY OBJECTION; PRESERVING CONFIDENTIALITY;**
**ENTRY OF PROTECTIVE ORDER**

(a)     **Premature Discovery Objection.** A party may object to a request for discovery seeking information or documents in advance of the deadline in the Patent Scheduling Order for disclosure of such information or documents.

(b)     **Confidentiality.** The parties shall not delay making disclosures under Fed. R. Civ. P. 26(a) on the grounds of confidentiality. The parties shall not delay responding to discovery on the grounds of confidentiality. The producing party may designate a discovery response as "confidential" or use another confidential designation such as "outside attorneys' eyes only". Disclosure of a confidential document or information by the receiving party shall be limited by the designation of confidentiality.

(c)     **Protective Order.** No later than ten (10) days prior to the Rule 16 Scheduling Conference: (1) the parties shall submit an agreed proposed protective order; or (2) if they cannot agree, each party shall submit a separate proposed protective order which specifically identifies the provisions on which the parties agree and disagree. Each party simultaneously may submit a brief of no more than two (2) pages in support of its proposed protective order.

**D.C.COLO.LPtR 4**
**DISCLOSURE OF ASSERTED CLAIMS AND INFRINGEMENT CONTENTIONS**

(a)     **Infringement Contentions.** By the date specified in the Patent Scheduling Order, a party claiming patent infringement shall serve Infringement Contentions identifying with specificity each accused product or process (the "Accused Instrumentality").

(b)     **Claim Chart.** A party who serves Infringement Contentions also shall serve a claim chart for each Accused Instrumentality. If two or more Accused Instrumentalities have the same relevant characteristics, they may be

2

Adopted June 4, 2014
Effective August 1, 2014

Add. 64

grouped together in one claim chart. The claim chart(s) shall be specific and shall contain the following information:

(1)     Identification of each claim of each patent in suit that is allegedly infringed by the Accused Instrumentality;

(2)     Identification of the specific location of each limitation of the claim within each Accused Instrumentality, including for each limitation that the party contends is governed by 35 U.S.C. §112(f), the identity of the structures, acts, or materials in the Accused Instrumentality that perform the claimed function;

(3)     A statement of whether each limitation of each asserted claim is literally present in the Accused Instrumentality or present under the doctrine of equivalents; and,

(4)     If an allegation of direct infringement is based on acts of multiple parties, a description of the role of each such party in the direct infringement.

## D.C.COLO.LPtR 5
## DOCUMENT PRODUCTION ACCOMPANYING INFRINGEMENT CONTENTIONS

Contemporaneously with service of the Infringement Contentions, the party claiming patent infringement shall produce to each party (or make available for inspection and copying) the following documents and identify by production number which documents correspond to each category:

(a)     All documents demonstrating each disclosure, sale (or offer to sell), or any public use, of the claimed invention before the application date or the priority date (whichever is earlier) for each patent in suit;

(b)     All documents created on or before the application date or the priority date (whichever is earlier) for each patent in suit that demonstrate each claimed invention's conception and earliest reduction to practice;

(c)     A copy of the patent(s) in suit and all communications with the United States Patent and Trademark Office regarding the patent(s) in suit and any related application(s); and

(d)     All documents demonstrating ownership of the patent rights by the party claiming patent infringement.

**Adopted June 4, 2014**
**Effective August 1, 2014**

**Add. 65**

**D.C.COLO.LPtR 6**
**RESPONSE TO INFRINGEMENT CONTENTIONS**

By the date specified in the Patent Scheduling Order, a party opposing a claim of patent infringement shall serve its Response to Infringement Contentions, which shall be specific and include the following:

(a)     A clear identification of each limitation of each asserted claim alleged not to be present in the Accused Instrumentality;

(b)     A detailed description of the factual and legal grounds for each limitation identified in subdivision (a); and

(c)     To the extent that the Response to Infringement Contentions is based on claim interpretation, identification of any relevant claim term.

**D.C.COLO.LPtR 7**
**DOCUMENT PRODUCTION ACCOMPANYING RESPONSE**
**TO INFRINGEMENT CONTENTIONS**

Contemporaneously with service of the Response to Infringement Contentions, a party opposing a claim of patent infringement shall produce to each party (or make available for inspection or copying) the following:

(a)     All documents sufficient to show the operation of any aspect or elements of an Accused Instrumentality identified by the party claiming patent infringement in its Infringement Contentions under D.C.COLO.LPtR 4; and

(b)     If relevant, source code, specifications, schematics, flow charts, artwork, formulas, and any other description of the operation of the Accused Instrumentality.

**D.C.COLO.LPtR 8**
**INVALIDITY CONTENTIONS**

**(a)     Invalidity Contentions.** By the date specified in the Patent Scheduling Order, a party opposing a claim of patent infringement shall serve its Invalidity Contentions, if any.

**(b)     Claim Chart.** The Invalidity Contentions shall include a chart (or charts) identifying each allegedly invalid claim, and each item of prior art that

4

Adopted June 4, 2014
Effective August 1, 2014

**Add. 66**

anticipates or renders each claim obvious, including the specific location in the items of prior art of each limitation of each asserted claim. Claim charts shall be specific and contain the following information:

(1) An explanation, including the relevant statutory language, of how the item qualifies as prior art;

(2) If anticipation is alleged, identification of each item of prior art and an explanation of how it anticipates the asserted claim;

(3) If obviousness is alleged, identification of each item of prior art or combination of items of prior art, and, separately for each item of prior art or combination of items of prior art, an explanation of how the item or combination of items renders the asserted claims obvious; and

(4) A statement explaining any other grounds of invalidity of any asserted claims.

## D.C.COLO.LPtR 9
## PRODUCTION OF PRIOR ART
## WITH INVALIDITY CONTENTIONS

Contemporaneously with service of the Invalidity Contentions, a party opposing a claim of patent infringement shall produce to each party (or make available for inspection and copying) a copy of each item of prior art identified under D.C.COLO.LPtR 8 which does not appear in the file history of any patent at issue. If an item of prior art is not in English, an English translation shall be provided.

## D.C.COLO.LPtR 10
## RESPONSE TO INVALIDITY CONTENTIONS

(a) **Response to Invalidity Contentions.** By the date specified in the Patent Scheduling Order, a party claiming patent infringement shall serve a Response to Invalidity Contentions.

(b) **Claim Chart.** The Response to Invalidity Contentions shall include a chart or charts which respond to the corresponding Invalidity Contentions. A claim chart shall be specific and contain the following information:

(1) For each item of asserted prior art, identification of each limitation of a claim that the party believes is absent from the prior art.

5

Adopted June 4, 2014
Effective August 1, 2014

**Add. 67**

(2)     If the Response is based on claim interpretation, identification of the relevant claim term; and

(3)     If obviousness is alleged, an explanation of why the prior art does not render the asserted claim obvious.

**(c)     Information for Design Patents.** For design patents, a party shall explain why the prior art does not anticipate the claim.

## D.C.COLO.LPtR 11
## DOCUMENTS ACCOMPANYING RESPONSE TO INVALIDITY CONTENTIONS

Contemporaneously with service of the Response to Invalidity Contentions, a party claiming patent infringement shall produce to each party (or make available for inspection and copying) any document, electronically stored information, or thing supporting the Response.

## D.C.COLO.LPtR 12
## DISCLOSURE REQUIREMENT IN PATENT CASES SEEKING DECLARATORY JUDGMENT

If a party files a pleading seeking a declaratory judgment that a patent is not infringed, is invalid, or is unenforceable and the responsive pleading does not include a claim for patent infringement, then D.C.COLO.LPtR 4 shall not apply. If a party does not assert a claim for patent infringement in its answer to the pleading requesting declaratory judgment, then the party seeking a declaratory judgment shall proceed under D.C.COLO.LPtR 8 by the date specified in the Patent Scheduling Order.

## D.C.COLO.LPtR 13
## OPINION OF COUNSEL

**(a)     Production of Opinion.** By the date specified in the Patent Scheduling Order, a party relying on an opinion of counsel to defend a claim of willful infringement, induced infringement, or contributory infringement, to assert that a case is exceptional shall disclose the identity of counsel and produce (or make available for inspection and copying) the written opinion and any document containing the facts and data considered by counsel in forming the opinion.

**(b)     Privilege Log.** A party relying on an opinion of counsel shall serve a privilege log complying with Fed. R. Civ. P. 26 (b)(5)(A).

6

Adopted June 4, 2014
Effective August 1, 2014

**D.C.COLO.LPtR 14**
**JOINT CLAIM TERMS CHART**

By the date specified in the Patent Scheduling Order, the parties shall file a Joint Disputed Claim Terms Chart identifying the disputed claim terms and phrases and each party's proposed construction with citations to supporting intrinsic and extrinsic evidence.

**D.C.COLO.LPtR 15**
**CLAIM CONSTRUCTION BRIEFING**

Unless otherwise ordered, by the date specified in the Patent Scheduling Order:

(a)     A party opposing a claim of patent infringement and/or asserting invalidity (if there is no infringement issue in the case) shall file an opening claim construction brief which shall include all supporting evidence;

(b)     An opposing party shall file a response which shall include all supporting evidence;

(c)     A party filing an opening claim construction brief may file a reply; and

(d)     Contemporaneously with the completion of claim construction briefing, the parties shall file a "Joint Motion for Determination".

**D.C.COLO.LPtR 16**
**FINAL PATENT CONTENTION DISCLOSURES**

**(a)     Final Infringement Contentions.**

   **(1)     Due Date.** No later than 28 days after the claim construction order is filed, a party asserting infringement shall serve its Final Infringement Contentions.

   **(2)     Contents.** Unless otherwise ordered, a party shall not assert at trial an infringement contention not contained in its Final Infringement Contentions.

   **(3)     Amendments.** Final Infringement Contentions shall not identify additional accused products or processes not contained in the

7

Adopted June 4, 2014
Effective August 1, 2014

**Add. 69**

preliminary infringement contentions without good cause (e.g., discovery of previously undiscovered information or an unanticipated claim-construction ruling). The party asserting infringement shall include a separate statement of good cause for any amendment.

(4) **Exclusion.** Accused infringers may seek to exclude an amendment to Final Infringement Contentions on grounds that good cause does not exist.

(5) **Due Date for a Motion to Exclude.** A motion to exclude shall be filed no later than 14 days after service of the Final Infringement Contentions.

(6) **Failure to Object.** Any unopposed amendment to the Final Infringement Contentions shall be included.

(b) **Final Invalidity Contentions.**

(1) **Due Date.** No later than 21 days after service of the Final Infringement Contentions, each accused infringer shall serve its Final Invalidity Contentions.

(2) **Contents.** Final Invalidity Contentions shall include a party's final statement of all contentions. A party shall not assert at trial any invalidity contention not contained in its Final Invalidity Contentions.

(3) **Amendments.** If the Final Invalidity Contentions identify additional prior art, the amendment shall be supported by good cause (e.g., discovery of previously undiscovered information or an unanticipated claim-construction ruling) and an accused infringer shall include a separate statement of good cause for any amendment.

(4) **Exclusion.** A party asserting infringement may seek to exclude an amendment to the Final Invalidity Contentions on grounds that good cause does not exist.

(5) **Due Date for a Motion to Exclude.** A motion to exclude shall be filed no later than 14 days after service of the Final Invalidity Contentions.

(6) **Failure to Object.** Any unopposed amendment to the Final Invalidity Contentions shall be included.

**Adopted June 4, 2014**
**Effective August 1, 2014**

**D.C.COLO.LPtR 17**
**WORD LIMITS; CERTIFICATE OF COMPLIANCE**

Unless otherwise ordered:

(a)     A claim construction brief or brief on a dispositive motion shall not exceed 10,000 words, double spaced, in Arial 12 point font.

(b)     If a party files a supporting brief and a reply brief, the two briefs together shall not exceed 10,000 words, double spaced, in Arial 12 point font.

(c)     Each brief shall include a Certificate of Compliance stating the number of words in the brief.


**APPROVED BY THE COURT in Denver, Colorado on the 4th day of June, 2014.**

**Adopted June 4, 2014**
**Effective August 1, 2014**

**CERTIFICATE OF FILING AND SERVICE**

I hereby certify that on this July 7, 2014, I caused this Reply Brief of

Appellant to be filed electronically with the Clerk of the Court using the CM/ECF

System, which will send notice of such filing to the following registered CM/ECF

users:

Michael A. Albert
Gerald B. Hrycyszyn
Hunter D. Keeton
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210
(617) 646-8000

*Counsel for Appellees Green Mountain Coffee Roasters, Inc.
& Keurig, Incorporated*

Aaron P. Bradford
Alexander C. Clayden
LATHROP & GAGE LLP
950 17th Street, Suite 2400
Denver, Colorado 80202
(720) 931-3200

*Counsel for Appellees Green Mountain Coffee Roasters, Inc.,
Keurig, Incorporated, & Starbucks Corporation*

Upon acceptance by the Clerk of the Court of the electronically filed document, the required number of copies of the Reply Brief of Appellant will be hand filed at the Office of the Clerk, United States Court of Appeals for the Federal Circuit in accordance with the Federal Circuit Rules.

/s/ Robert R. Brunelli
*Counsel for Appellant*

# CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ X ] this brief contains 6,950 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[ ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

[ ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: July 7, 2014

/s/ Robert R. Brunelli
*Counsel for Appellant*